# Fountain *v.* The State.

*Indictment for Fraudulent Removal of Mortgaged Property.*

1. *Motion for new trial.*—This court will not consider a motion for a new trial, and the affidavits filed in support thereof, when these are not made a part of the bill of exceptions, they being no part of the *record* of the trial court.

2. *Same; newly discovered evidence.*—Where a motion for a new trial is predicated upon newly discovered evidence, and denied, this court, on appeal, will not reverse the ruling of the trial court, when it appears that the averments of the motion are wholly insufficient, and unsupported by proof of defendant's diligence, or lack of fault in the discovery and production of such evidence on the trial.

3. *Argumentative charge.*—A charge that singles out, and gives undue prominence to the evidence of one witness, is argumentative, and therefore properly refused.

4. *Affirmative charge; when properly refused.*—A charge asked for the defendant, that, "if the jury believe the evidence they must acquit the defendant," is properly refused, when there was evidence from which his guilt might have been inferred.

5. *Charge invading the province of the jury; also, argumentative.*—The charge: "The fact that Marks did not get back the yoke of steers covered by the mortgage, by itself, does not furnish any presumption that the defendant sold or removed them, as charged," is argumentative, invasive of the province of the jury, and properly refused.

6. *Misleading charge.*—Where the defendant is charged with fraudulently selling or removing *two oxen,* under mortgage, a charge is properly refused, which instructs the jury, "that they cannot find the defendant guilty under the indictment, unless, it is proved, beyond a

[Fountain v. The State.]

reasonable doubt, that the defendant sold or removed, 'a yoke of oxen;' that the sale or removal of one ox, is not sufficient."

7. *Invading province of jury; presumption of fact, not of law.*—A charge which asks that: "If the jury find that Marks took from the defendant, at the time he took possession of the mortgaged property, a steer not covered by the mortgage, the presumption is that this steer was substituted for one of the steers covered by the mortgage, and the defendant cannot be convicted of selling or removing a yoke of oxen, as charged in the indictment," is faulty in that it is invasive of the province of the jury, and declares to be a presumption of law, what is, at most, only a presumption of fact.

8. *Argumentative charge; often condemned by this court.*—Charge, numbered 6, in record, as follows: "If the evidence shows that the value of the property surrendered by the defendant, to Marks, under the mortgage, was of sufficient value to satisfy the mortgage debt, the jury may look to this fact to determine whether the property was disposed of by the defendant, if disposed of, with the intent to defraud Marks," is argumentative and abstract; and, rightly refused.

9. *Relevancy of proof of character of defendant, for truth and veracity.*—When the defendant, charged with the fraudulent removal of mortgaged property, has testified for himself, to facts tending to show his innocence, the testimony of other witnesses that they would not believe him on oath,—that his character for truthfulness was bad—is admissible, for the consideration of the jury, in determining upon his guilt, *vel non*.

APPEAL from Decatur City Court.
Tried before the Hon. W. H. SIMPSON.

The defendant in this case, John Fountain, was indicted for selling two oxen, upon which he had given a mortgage, with the purpose of hindering, delaying or defrauding the mortgagee, (§ 3835 of Code). The evidence, on the trial, showed that, on Dec. the 15th, 1890, the defendant bought of one, Marks, a yoke of oxen, and a wagon, and, to secure a debt of $125.00 to Marks, made a mortgage to him, upon the same, besides another wagon, and another yoke of oxen, (a red ox and a brown ox), already in the possession of the defendant. This mortgage was due and payable, March the 10th, 1891. Upon its maturity, the mortgagee testified he made demand for the mortgaged property, but found that the defendant did not have the red and brown oxen in his possession; that the defendant told the mortgagee, that these had died. This witness, Marks, testified that he had seen three of the mortgaged oxen in the possession of the defendant subsequent to the time the defendant said the two had died; and that he took possession of the mortgaged property, except the missing red and brown oxen; and that it was worth about twenty-five dollars. A witness for the State testified, that he had seen the defendant, in the latter part of the year 1890, offering a yoke of oxen for sale to one, Edgefield, for a cow and calf and some corn. Another wit-.

ness for the State, swore that in December, 1890, the defendant sold to one, Edgefield, a yoke of oxen, (one red, and one brindle ox); he had heard the defendant say that he sold the oxen to Edgefield. This witness further testified, that Edgefield, soon after, moved to Texas, driving these oxen, and had not since returned.

The defendant testified, that he had sold a yoke of steers to Edgefield, but, that this was a short time before he made the mortgage to Marks; that they were different oxen; that two of the oxen he mortgaged to Marks had died in January, 1891.

Another witness, for the defendant, testified that he lived in Decatur in 1890 and 1891, and was employed to haul off dead animals from the corporate limits of that town; that he had hauled off two dead steers for the defendant, one a red, and the other a flea-bitten steer; witness did not remember the date exactly, but it was about January, 1891. In rebuttal, the State examined two witnesses, who testified that they knew the character of the defendant for truth and veracity, and that it was bad, that they would not believe the defendant on oath. This was substantially all the evidence in the case. The defendant asked the following written charges:

1. "If the jury believe the evidence, they must acquit the defendant."

2. "If the jury believe the testimony of Marks, that the defendant had the yoke of oxen in question in this case, in his possession about March 1st, 1891, they cannot find him guilty of the sale to Edgefield in December, 1890."

3. "The fact that Marks did not get back the yoke of steers covered by the mortgage, by itself, does not furnish any presumption that the defendant sold or removed the yoke of oxen, as charged in the indictment."

4. "Unless it is proved, beyond a reasonable doubt, that the defendant sold or removed a yoke of oxen, the jury can not find him guilty under the indictment. The sale or removal of one ox, is not sufficient."

5. "If the jury find that Marks took from the defendant, at the time when he took possession of the mortgaged property, a steer not covered by the mortgage, the presumption is that this steer was substituted for one of the steers covered by the mortgage, and the defendant cannot be convicted of selling or removing a yoke of oxen as charged in the indictment."

6. "If the evidence shows that the value of the property surrendered by the defendant to Marks, under the mortgage,

was of sufficient value to satisfy the mortgage debt, the jury may look to this fact, to determine whether the property was disposed of by the defendant, if disposed of, with the intent to defraud Marks."

7. "The defendant's character for truth and veracity has no bearing whatever, on the question of the guilt of the defendant of the offense charged in the indictment."

The court refused each and all of these charges, and the defendant separately excepted.

The jury found the defendant guilty, and assessed the value of the property at twenty-five dollars. A sentence of one year's hard labor was imposed by the court, besides judgment for the value of the removed property, and costs of the prosecution.

In the transcript sent up to this court, is copied a motion, made in the trial court, for a new trial, together with a number of affidavits, there filed in support of the motion. These appear separate from, and not embodied in the bill of exceptions; and, not being any part of the *record* of the trial court, would not, but for the notice taken of them by this court, be here set out. The grounds of the motion are stated as follows:

1. That the verdict was contrary to law.

2. That the verdict was contrary to the evidence.

3. That the verdict was contrary to the law and the evidence.

4. Upon the exceptions reserved by the defendant on the trial.

5. On the ground of newly discovered evidence.

Then follow the affidavits of Henry Yarbrough, J. W. Pipkin and J. M. Dutton.

Henry Yarbrough's affidavit was, that affiant was a resident of Decatur, and had been for the last five or six years; that he had known the defendant for the last five years; that he knew the oxen mortgaged by the defendant to Marks on the 15th of December, 1890; that one was a red, and the other a brown ox; that he had seen them frequently; that he had seen them during the time the defendant had in his possession another yoke of oxen, that he had bought of Marks, up to the time the latter died; that he saw both of these oxen after they had died; that they died about two years ago; (date of affidavit, January 13, 1893); that said red ox died in Si. Sullivan's yard, on Church street, and, the brown ox died at Jennie Foster's, on the line between Old and New Decatur. The affidavits of J. W. Pepkin and J. M. Dutton were to the same effect: that each of affiants knew

[Fountain v. The State.]

the oxen bought by the defendant from Marks, and that both had seen the said brown ox dead, about the time and place stated in the affidavit of Yarbrough. Neither of these affidavits testified about the red ox. This was all the showing made in support of the motion. The court denied the motion for a new trial, and the defendant excepted.

MORRIS A. TYNG, for the appellant, cited *Green v. The State*, p. 541.

WM. L. MARTIN, Attorney-General, for the State.

McCLELLAN, J.—What purports to be a motion for a new trial and affidavits filed in support thereof, are copied in the transcript before us. This motion and these affidavits are, of course, no part of the *record* of the trial court. Nor are they embodied in or shown by the *bill of exceptions* taken on the trial. Presented as they are, they are not presented at all in legal contemplation for revision by this court. We may say, however, that had the motion, the evidence in support of it, the judgment of the City Court upon it, and the exception to that judgment been properly shown by the bill of exceptions, the exception would be unavailing to the appellant. The verdict was not contrary to the law or the evidence, as insisted by the motion, in the sense of requiring the lower court or this to grant a new trial.—*Cobb v. Malone & Collins*, 92 Ala. 630. The exceptions taken on the trial, upon which the motion is also based, were, as we shall presently see, without merit. And so far as the motion is predicated upon newly discovered evidence, which is the only other reason advanced for the granting of a new trial, it is wholly insufficient in its averments, and entirely unsupported by evidence as to defendant's diligence or lack of fault in respect of the discovery and production of the alleged newly discovered evidence on the trial.

The evidence on the trial is set out in full in the bill of exceptions with the statement that "this is substantially all the evidence in the case."

2. The trial court committed no error in its rulings on defendant's requests for instructions. There was evidence from which the guilt of defendant might have been inferred, and hence charge 1 requested by the defendant, requiring an acquittal if the jury believed the evidence was properly refused. Charge 2 was bad in that it singled out and gave undue prominence to the evidence of one witness, and is, therefore, argumentative in its character. Charge 3 is also

argumentative in form and substance, and is invasive of the province of the jury in that it prescribes the weight they shall give to a particular fact dissociated from other facts which the evidence tended to establish.   Charge 4 is bad in that it gratuitously· assumes that the indictment charges that the defendant sold a "yoke of oxen."   Charge 3, above referred to, is open also to the infirmities which affect charge 4.   Charge 5 is faulty, for that, among other things, it invades the province of the jury by declaring to be a presumption of law what, at most, could be only a presumption of fact.   Charge 6 is of a class very many times condemned by this court.   The jury should not be told to look to this fact, or that they may consider that fact, &c., &c., in reaching a conclusion as to the guilt of the defendant, or as to the existence of any material element of the offense charged. Moreover, this charge is abstract.   There is no evidence in the case that the property surrendered by the defendant was of sufficient value to satisfy the mortgage debt.

It may be conceded that the bad character of defendant for truth and veracity would not, of itself, have any bearing on the question of the guilt of the defendant abstractly considered, or, in other words, that the fact that defendant was unworthy of credence, did not tend to show that he was guilty of selling mortgaged property, as charged in the indictment.   But the defendant having testified for himself to facts tending to show his innocence, the testimony of other witnesses that his character for truth and veracity were bad, and that they would not believe him on oath, was important for the jury to consider in reaching a conclusion of guilt *vel non*; and the necessary tendency of this charge was to mislead them from a consideration of defendant's character in this respect in weighing the evidence. On this ground, if not on others, the 7th charge was properly refused.

There is no error in the record, and the judgment must be Affirmed.