# Stone v. The State.

### Indictment for Arson.

1. *Amendment of indictment by consent; must be shown by the record.* The consent of a defendant to the amendment of an indictment being the consent to the amendment of a matter of record, should appear of record, and the terms of his consent are to be determined by the recitals of the record, and not from the bill of exceptions ; and when so ascertained the terms of the consent must be strictly adhered to.

2. *Same; amendment must follow the terms of consent; otherwise unauthorized.*—Where on a trial under an indictment which charges that the defendant "willfully set fire to or burned a barn within the curtilage of the dwelling-house of C ,'' the evidence shows a variance between the allegations of the indictment and the proof in the description of the property burned, and the defendant consents to an amendment of the indictment so as to describe the property burned as "being a corn-crib, the personal property of C., or a barn within the curtilage of the dwelling-house of P.,'' it is error for the court to allow an amendment by retaining the original indictment unamended and adding separate counts averring, respectively, that the defendant willfully set fire to or burned "a corn-crib of P., containing at the time corn in the ear ;'' "a corn-crib of P., in which at the time was contained corn in the ear, by the burning whereof a barn within the curtilage of the dwelling-house of P., was burned ;'' and "a barn within the curtilage of the dwelling house of P., by the burning whereof a corn-crib of P. was burned ;'' the defendant's consent not authorizing such amendment, and he being entitled to stand upon the very terms of his consent.

3. *Confessions; admissible, though procured by the artifice of a detective.*—Confessions obtained from a defendant through the artifice and deception of a detective by making the defendant believe that he was in sympathy with the person who committed the crime, should not be excluded, if otherwise admissible ; and the fact that the confessions were induced by the detective holding out to defendant a promise of employment to commit similar crimes, does not render the confessions involuntary and therefore inadmissible, since such inducement was not the offer of hope or promise of favor in reference to the crime charged.

4. *Hearsay evidence, inadmissible.*—The testimony of a witness that he heard another person say that defendant's accomplice told him why he committed the crime charged and that defendant helped him, is purely hearsay evidence and inadmissible.

5. *Evidence tending to show motive; when admissible.*—Where it is

[Stone·v. The State.]

shown in a criminal case that the defendant and his accomplice confessed in the presence of each other that they committed the crime together, evidence tending to show a motive on the part of either to commit the crime is admissible against both.

6. *Failure to prove venue, entitles defendant to general affirmative charge.*—Where, in a criminal case, the bill of exceptions recites that it "contains all the evidence introduced on the trial of the cause," and it does not contain any evidence that the alleged offense was committed within the jurisdiction of the trial court, as averred in the indictment, the defendant is entitled to have the jury instructed that if they "believe the evidence, they must find the defendant not guilty ;" and the refusal to give this charge is error.

7. *Corpus delicti; presumption of legal responsibility; charge to jury.* When on a trial under an indictment for arson there is testimony tending to show that the building described in the indictment was willfully set fire to and burned by some extraneous human agency, there is sufficient proof of the *corpus delicti*, since the *prima facie* presumption of the law is that such human agent was legally responsible ; and in such case charges predicated on the assumption that there was a failure to prove the *corpus delicti* are properly refused.

8. *Proof of motive; its failure no ground for reasonable doubt.*—The proof of motive to commit the offense charged is not essential to conviction in any case ; and the absence of such proof is no ground for acquittal, and can not be made the basis of a reasonable doubt of defendant's guilt.

9. *Argumentative charges, properly refused.*—Charges which instruct the jury that they "can not look," to this evidence, or "may look" to that fact, are properly refused, because they are both argumentative and give undue prominence to the evidence or facts proposed to be thus brought specially to the attention of the jury.

10. *Confessions; jury can not determine their admissibility, charge thereon.*—It is the duty of the court to determine the admissibility of confessions, and after they are admitted it is the province of the jury to consider them in connection with all the other evidence in the case, but it is not open to them to find that they were not voluntarily made ; and in a criminal case were confessions have been admitted in evidence by the court, a charge which instructs the jury that "unless they are satisfied that the confessions were made freely and voluntarily, without inducements or persuasions, they must acquit the defendant," is erroneous and properly refused.

11. *Argument of counsel before jury; how questions arising therefrom presented.*—In order to have questions arising from improper arguments of counsel to jury reviewed on ·appeal, the trial court should be asked to remedy the injury by eradicating the effect such remarks may have had on the minds of the jury in some appropriate manner, and upon the court's refusal to act, or·upon acting erroneously, to·reserve an exception to such ruling ; and where exceptions are reserved to the remarks of counsel, and not to what the court did or failed to

do in reference thereto, such remarks will not be considered on appeal.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. H. C. SPEAKE.

The appellant was indicted, tried and convicted of arson, and sentenced to the penitentiary for 7 years. The indictment as originally preferred, and the amendments thereto are shown in the opinion. The defendants duly excepted to the court allowing the addition of the new counts to the indictment.

On the trial of the cause, as is shown by the bill of exceptions, Henry Chase, as a witness for the State, testified that the barn of the Alabama Nursery Company was destroyed by fire about 12:30 o'clock on the night of June 8, 1894, with eleven head of stock and some provender; that this barn was about 80 or 100 feet from the residence of Dudley Powell, who was in the employ of the Alabama Nursery Company, and about 300 yards from the dwelling-house of Herbert Chase; that the barn and the dwelling-house of Herbert Chase were under the common fence, which inclosed about 380 acres of land; that there were several buildings between the dwelling of Herbert Chase and the barn that was burned, and that there was another barn quite near the dwelling-house of Herbert Chase, and used in connection with it; that the barn that was burned and the dwelling-house occupied by Powell were in the possession and control of Herbert Chase. This witness further testified that Aaron Hammond had been in the employ of the Alabama Nursery Company, to whom the property burned belonged, and that his wages had been reduced by said company. Dudley Powell, a witness for the State, testified that the property burned consisted of two separate buildings, the barn and a corn-crib containing corn; that the buildings burned were within 80 or 100 feet of his dwelling, and that he was in the employ of the Alabama Nursery Company, to whom the buildings burned belonged; and that he had possession, charge and control of the buildings that were burned.

Z. P. Davis, the chief of police of the city of Huntsville, and J. P. Powell, the sheriff of Madison county, testified that on the night of July 22, 1894, by previous agreement with one Richardson, a detective from Mem-

[Stone v. The State.]

phis employed by Chase to work up the case, they stationed themselves in a secluded place on the side of the road about two miles from Huntsville; that· after they had been there a short time, Richardson and the defendant and Aaron Hammond drove up in a buggy within 8 or 10 feet of where they were hidden. Upon the examination by the defendant of these witnesses at this juncture of their testimony, they testified: ''We did not know where Richardson got up with Hammond and Stone, or what he said to them on the way to where we were to meet him, nor what led up to the conversation between him and Hammond and Stone, nor whether he offered them any inducement or reward or made any promises of any kind to them to induce them to make the statements we heard, and all we know is the statements were made, and that Hammond and Stone were not aware of our presence.'' Thereupon the defendant objected to the witness giving any conversation that occurred between the detective and Hammond and Stone. The court overruled their objection, and thereupon the witness testified as follows: ''We heard Richardson ask 'if this was a good place to stop and talk,' and Hammond replied, 'there are some houses near here, but if we talk low it will be safe.' Richardson then said: 'I want to know who it was that burned Chase's barn, they were slick ducks, and I want to know them.' Hammond spoke up and said, 'Me and Tom done it, we did the burning out there.' Stone said: 'Me and Aaron done it, we did the burning out there.' And both Hammond and Stone said: 'If you don't believe we are good hands at the business and will do what we say, why just pick your house, and we will burn it to-night.' Hammond also said: 'Tom is a man in whom I have the utmost confidence and you can trust him.' The parties then drove off.'' The defendant objected to the court's admitting this testimony in evidence, moved the court to exclude the same from the jury, and duly excepted to the court's overruling his motion. The witness Davis further testified ''that he heard Richardson say that Aaron Hammond told him the reason he burnt Chase's barn was that his wages had been reduced by the Alabama Nursery Company, and that Stone had helped him to do it.'' The defendant objected to the witness Davis testifying as to the conversation between Richardson.

and Hammond and Stone, moved to exclude the same from the jury, and duly excepted to the court's overruling his motion.

The defense attempted to be made by the defendant was that of an *alibi*, and he introduced evidence tending to show that he was not present at the place of the burning on the night the barn and crib were alleged to have been burned.

Upon the introduction of all the evidence, the defendant requested the court to give the following written charges, and separately excepted to the court's refusal to give each of them as asked : (1.) "If the evidence of Henry Chase and Dudley Powell as to the one or the other having possession, charge and control of the barn —Chase that he had possession and Powell that he had —are equally balanced in the minds of the jury, they must find the defendant not guilty." (2.) "If the jury believe the evidence of Henry Chase, they must find for the defendant." (3.) "If the jury believe the evidence in this case, they must find the defendant not guilty." (4.) "The jury can not look to the evidence of Henry Chase as to reducing the wages of Aaron Hammond as furnishing a motive to this defendant to commit the offense alleged." (5.) "The jury can not look to the evidence of Mr. Davis stating that Mr. Richardson told him that Aaron Hammond said to him, Richardson, that he burned this barn because Mr. Chase cut down his wages, as furnishing a motive to this defendant for the commission of the alleged offense." (6.) "The law presumes that no one will commit a crime without a motive, and the absence of motive is sufficient in itself to generate such a doubt of guilt as to bring about an acquittal." (7.) "It is the duty of the State to furnish you the best evidence the nature of the case affords, and you may look to the fact that the detective Richardson is not produced before you in determining what weight you will give to the alleged confessions." (8.) "The jury must take with caution confessions produced in the manner shown in this case, and the jury must be satisfied beyond a reasonable doubt that the statements claimed to have been overheard by Powell and Davis were not produced by Richardson by promises of reward or by trickery or deception." (9.) "If the the jury find from the evidence that Tom Stone had no motive to

do this burning, this fact alone, if it be a fact, could be taken by them to generate a reasonable doubt of his guilt, and entitle him to be acquitted." (10.) "Unless the jury is satisfied that the confessions testified to by Mr. Davis and sheriff Powell were made freely and voluntarily, without inducements or persuasions, they must acquit the defendant." (11.) "If the jury is satisfied that there is no other evidence beyond confessions testified to by Mr. Davis and Mr. J. P. Powell, showing that the barn was burned willfully by some responsible person, the defendant must be acquitted." (12.) "If the jury find from the evidence that Tom Stone had no motive to burn this property, they would be justified in basing a reasonable doubt of his guilt on this."

The bill of exceptions states that, "In the course of his argument the solicitor said to the jury: 'He don't say he didn't do it,' whereupon the defendant excepted to this language. The court told the solicitor he should not comment on the failure of the defendant to testify, and the solicitor replied, 'I have not commented on his not testifying nor shall I; but that he offers no proof to rebut that offered by the State, setting here holding his mouth.' The defendant duly excepted to this language by the solicitor, and assigns the same as error."

TANCRED BETTS and R. E. SPRAGINS, for appellant.— The *corpus delicti* in this case, which is the willful burning of the house described in the indictment by some responsible being, was not proved.—*Winslow v. State*, 76 Ala. 42.

The confessions testified to by the witnesses Davis and Powell were shown not to have been voluntarily made. These witnesses knew nothing of what had taken place between the detective and the defendant and his accomplice, and the confessions testified to were garbled portions of what was shown to be a continuous conversation. The alleged confessions were, therefore, inadmissible.—*Redd v. State*, 69 Ala. 255; *Newman v. State*, 49 Ala. 9; *Kelly v. State*, 72 Ala. 244; *Young v. State*, 68 Ala. 569; *Lacey v. State*, 58 Ala. 385; *Burns v. State*, 49 Ala. 370; *Levy v. State*, 49 Ala. 390; *Eiland v. State*, 52 Ala. 322; *Levy v. State*, 48 Ala. 171.

There is an entire absence of evidence showing any motive for the defendant to commit the alleged arson.

[Stone v. The State.]

The absence of such motive is a strong circumstance in defendant's favor, and for this reason the charges which instructed the jury that the absence of proof of any motive would justify their entertaining a reasonable doubt of the defendant's guilt, and therefore an acquittal, should have been given.—*Hall v. State*, 51 Ala. 9 ; *Faire v. State*, 58 Ala. 74; *Hudson v. State*, 61 Ala. 333 ; *Clifton v. State*, 73 Ala. 473.

W. C. FITTS, Attorney-General, for the State.—The *corpus delicti* in this case was sufficiently proved.— *Winslow v. State*, 76 Ala. 42.

The confessions of the defendant which were admitted in evidence were shown to have been freely made, and to have been unattended by any circumstance to even suggest alarm or fear; and were clearly admissible.— *Grant v. State*, 55 Ala. 201.

The appellate court in revising the ruling of the trial court upon the admisssibility of confessions, as in revising other rulings by an inferior court on controverted questions of fact, will not reverse the judgment unless it apears to be manifestly wrong.—*Bonner v. State*, 55 Ala. 242.

McCLELLAN, J.—The indictment returned by the grand jury in this case charged that Tom Stone "willfully set fire to or burned a barn within the curtilage of the dwelling-house of Herbert Chase ;" and to this indictment there was a plea of not guilty, and a joinder of issue thereon. The case thus made up was presented to the jury, the evidence was adduced on both sides, and the jury were instructed by the court and retired to consider of their verdict, "when;" as is recited in the judgment, "it appearing to the court that there was a variance between the allegations and the proof in this : the indictment described the property as a barn within the curtilage of Herbert Chase and the proof showing it was a barn within the curtilage of the dwelling-house of Dudley Powell, and the defendant consents that the indictment may be amended by describing the property willfully set fire to or burned as being a corn-crib, the personal property of Herbert Chase, or a barn within the curtilage of the dwelling-house of Dudley Powell. The State by its solicitor amends the indictment to meet

said variance by adding these counts as shown by indictment filed in open court on 22d day of August, 1894, to which the defendant again pleaded not guilty," upon which issue was joined &c. &c. The bill of exceptions states that upon the development of a variance between the averments of the indictment and the proof in the particular referred to, the defendant consented "for the indictment to be amended so as to show that it was a corn-crib, instead of a barn, and that the corn-crib was the property of Dudley Powell that was burned, and that the barn was within the curtilage of the dwelling-house of Dudley Powell." The consent of a defendant to the amendment of an indictment is his consent to the amendment of a matter of record, and should appear of record. Hence we must look to the judgment entry for the terms of this consent, and not to the bill of exceptions which is no part of the record in the court below. Under color of the consent shown by the judgment here "that the indictment may be amended by describing the property  *  *  *  *  as being a corn-crib, the personal property of Herbert Chase, or a barn within the curtilage of the dwelling-house of Dudley Powell," the solicitor was allowed by the court, against the defendant's objection, to add four counts to the indictment and to leave the indictment returned by the grand jury—constituting the first count in the indictment as amended—to stand without amendment. In these added counts it is charged, severally, that Tom Stone willfully set fire to or burned, *first*, "a barn within the curtilage of the dwelling house ef Dudley Powell;" *second*, "a corn-crib of Dudley Powell containing at the time corn in ear;" *third*, "a corn-crib of Dudley Powell, in which at the time was contained corn in the ear, by the burning whereof a barn within the curtilage of the dwelling house of Dudley Powell was burned;" and, *fourth*, "a barn within the curtilage of the dwelling house of Dudley Powell by the burning whereof a corn-crib of Dudley Powell was burned, which contained at the time corn in the ear." Now the only one of these four amendments which is covered by the defendant's consent as stated in the judgment entry is the first, viz., "a barn within the curtilage of the dwelling house of Dudley Powell." There was no consent that the indictment should be amended so as to aver the burning of a corn-

crib of Dudley Powell, or the corn-crib of either Powell
or Chase, or anybody else, *"containing corn,"* or that *by
the burning of such corn-crib, or any corn-crib*, a barn with-
in the curtilage of Dudley Powell was burned, or that
defendant burned a barn within the curtilage of Dudley
Powell *"by the burning whereof* a corn-crib of Dudley
Powell was burned, which contained at the time corn in
the ear."   The only amendment with respect to a corn-
crib covered by the consent had reference to a corn-crib
"the *personal* property of Herbert Chase," which was
not made at all, and which if it had been made could be
filled only by evidence of the burning of a corn-crib
which belonged to Chase, but was situated on the land of
another—these facts constituting the legal severance of
the crib from the freehold essential to the ownership of
the crib as *personal* property.   Moreover, the consent
was in effect that the amendment descriptive of the prop-
erty should be *substituted* for the description contained in
indictment as it came from the grand jury, thus wholly
eliminating that description and with it the charge that
the defendant burned a barn "within the curtilage of
Herbert Chase;" and yet this was not done, but to the
contrary, the defendant was put on trial for that alleged
offense also.   Many of the averments not covered by the
defendant's consent, if not all of them indeed, in the
amended indictment were most material (Code, §§ 3781,
3784) ; but whether material or not the court should not
have put him to answer them in the absence of his con-
sent that they be set forth in the indictment.   He was
entitled to stand upon the very terms of his consent and
to be absolved from defending against any charge in the
original indictment which, according to those terms
should have been eliminated, and also from defending
against any new charge in the amendment not clearly
authorized by those terms.   See Code, §§ 4389, 4390 ;
*Gregory v. State*, 46 Ala. 151 ; *Johnson v. State*, 46 Ala.
212 ; *Ross v. State*, 55 Ala. 177 ; *The State v. Kreps*, 8 Ala.
951.

The declarations of defendant and Aaron Hammond to
Richardson that they burned Chase's barn, were, in our
opinion, shown to have been voluntarily made.   They
were under no sort of constraint, not having been ar-
rested, or even accused of this or any other offense.
They were not in the presence of a person in authority,

[Stone v. The State.]

for Richardson was not such person, and the proximity of Davis and Powell was wholly unknown to them. That the confession was gotten from them by the artifice and deception of Richardson in making them believe that he was in sympathy with the barn burners, and wanted to have some burning done on his own account, is no reason for its exclusion.—1 Greenl. Ev., §§ 322, 323, 329; *King v. State*, 40 Ala. 314. And if it be true that the confession was induced by Richardson's holding out the promise of employment to commit other arsons to the persons who burned Chase's barn, yet this inducement involves only ''a collateral benefit or boon,'' and not the holding out of any hope or promise of favor in respect of that crime, and hence could not have the effect of rendering the confession of that offense involuntary.—1 Greenl. Ev., § 229; *McIntosh v. State*, 52 Ala. 355; 3 Am. & Eng. Ency. of Law, pp. 455-6, 470.

The testimony of the witness Davis ''that he heard Richardson say that Aaron Hammond told him the reason he burnt Chase's barn was that his wages had been reduced'' by the company of which Chase was an officer or the manager, ''and that Stone had helped him do it,'' was doubly hearsay. Had Richardson himself been the witness and deposed that Hammond had told him that defendant helped to commit the crime his testimony would have been patently inadmissible—a mere repetition of what a third person in the absence of the defendant had said as to the latter's connection with the offense. And the illegality of the testimony as adduced was accentuated and emphasized by the fact that it was repeated at third hand by a witness who had heard Richardson repeat the statement made out of court by Hammond. The circuit court erred in overruling defendant's motion to exclude this testimony.

Taken in connection with the confessions made by Hammond and the defendant in the presence of each other, that they together burned the barn, evidence tending to show a motive on the part of either to commit the the crime was, in our opinion, admissible against both. The court, therefore, properly admitted the evidence going to show a cause of quarrel or ground of complaint which Hammond had against the owner of the property—that he had been in the employment of

the owner and his wages had been reduced.

The bill of exceptions in this case recites that it "contains all the evidence introduced on the trial of the cause." It does not contain any evidence that the alleged offense was committed within the jurisdiction of the circuit court of Madison county : it does not appear that the burning was in Madison county. The affirmative charge requested by the defendant that, "if the jury believe the evidence in this case, they must find the defendant not guilty," should, therefore, have been given *Randolph v. State*, 100 Ala. 139 ; *Brown v, State*, *Ib*. 92 ; *Justice v. State*, 99 Ala. 180.

Several of the charges requested by the defendant proceeded on the ill founded assumption that there was a failure of proof as to the *corpus delicti*, and were therefore properly refused. The testimony of Powell tended to show, and, if believed by the jury, did show that the barn was willfully set fire to and burned by some extraneous human agency, and the *prima facie* presumption of law is that the human agent was a legally responsible one. These considerations serve also to emasculate objections to the confessions of the defendant which were based on the idea that the intentional burning of the barn by a responsible agent—*corpus delicti*—had not been shown.

Other requests for instruction assert in variant forms that the absence of proof of motive on the part of the defendant to commit the crime charged would justify the entertainment by the jury of a reasonable doubt of his guilt, and authorize his acquittal. This is not the law. Proof of motive is not essential to conviction in any case; nor can it be said in any case that absence of such proof is ground for acquittal. Its existence is a circumstance to be considered by the jury in determining guilt or innocence along with all the other evidence adduced, and the non-existence of proof of it is likewise a circumstance which the jury may consider along with the other evidence in reaching a conclusion of innocence, but neither its presence nor absence can of itself be justly said to control the finding of the jury. Crimes may be and frequently are thoroughly established without any evidence of motive, and the very absence of motive may aggravate the offense.

Charges requested to the effect that "the jury can not

look" to this evidence or that fact, or "may look" to certain evidence or to the fact that the State has failed to produce certain witnesses, &c., &c., were all properly refused, as has been many times declared by this court, because they are argumentative in a sense, and single out and give undue prominence to the facts proposed thus to be brought specially to the attention of the jury. *E. T., V. & G. R. R. Co. v. Thompson*, 94 Ala. 636; *Bell v. Kendall & Co.*, 93 Ala. 489; *Jackson v. Robinson, Ib.* 157; *Bancroft v. Otis*, 91 Ala. 279; *Waxelbaum v. Bell, Ib.* 331; *Brassell v. State, Ib.* 45; *Brantley v. State, Ib.* 47; *White v. Craft & Co., Ib.* 139; *Fountain v. State*, 98 Ala. 40.

It is the court's duty to determine the admissibility of confessions—whether they are voluntary or not—and it is the jury's province and duty to weigh and consider them. The jury may upon a consideration of all the evidence disbelieve the confessions—they may discredit the statements made by the accused—but it is not open to them, after the court has determined that question, to find that they were not freely and voluntarily made, and, *a priori*, should they not be instructed to acquit the defendant "unless they are satisfied that the confessions were made freely and voluntarily, without inducements or persuasions," as requested in this case. Confessions being before the jury are competent evidence, and the jury may believe them and they may be absolutely true in point of fact, though the jury may also believe, and such may be, the further fact that they would not have been made but for the influence of hope or fear excited in the mind of the defendant by inducements or threats held out or made by persons in authority. The jury may look to the circumstances under which the confessions were made to aid them to a conclusion as to their truth; but even the conclusion by the jury that they were not made voluntarily and freely would not of itself involve a disbelief of them.—*Young v. State*, 68 Ala. 569; *Redd v. State*, 69 Ala. 255; *Long v. State*, 86 Ala. 36; *McGuff v. State*, 88 Ala. 147.

We have considered the propositions embodied in charges requested by the defendant with a view to another trial. There was only a general exception to them in bulk, and under the law as it existed at the time of the trial below, this would avail the appellant nothing

[Ellis v. The State.]

unless each charge requested and refused should have been given.

The statute forbids comment in argument of a criminal cause upon the failure of the defendant to testify.—Code, § 4473. We construe both remarks shown by the bill of exceptions to have been made by the solicitor to be within the inhibition of the statute. But we cannot revise judgments here on account of the sayings and doings of counsel. We review only the action of *nisi prius courts*. To bring questions growing out of improper arguments of counsel under revision, the trial court must first be appealed to to remedy the wrong by eradicating any effect the argument may have had from the minds of the jury through appropriate instructions given them at the time and otherwise. If the court fails to act upon such appeal being made to it, or acts erroneously, an exception reserved to the act or omission of the court, and that alone, will bring the question before us. In this case the exception reserved was to what the solicitor said, and not to what the court did or failed to do.

Reversed and remanded.