# Campbell *v.* The State.

133   81
144   135

*Indictment for Murder.*

1. *Evidence; admissibility of declarations as part of res gestae.* When evidence of an act is in itself competent and admissible as a material fact in the case and is so admitted, the declarations accompanying and characterizing such act become and form a part of the *res gestae* of such act, and as such are admissible in evidence as explanatory thereof.

2. *Same; same; case at bar.*—On a trial under an indictment for murder, where it is shown that the defendant went to where the deceased and the defendant's father-in-law were engaged in a quarrel, and that the killing ensued as the result of the defendant taking part in the quarrel, after the introduction in evidence of the testimony of witnesses to the fact that the defendant went to the scene of the altercation between the deceased and his father-in-law, it is competent for the defendant to show the declarations made by him upon his starting to the scene of the altercation; such declarations being part of the *res gestae* of his act in going to the place of the altercation.

3. *Homicide; charge to the jury.*—On a trial under an indictment for murder, a charge is properly refused as being argumen-

6 c

[Campbell v. The State.]

tative which instructs the jury "that any threats made by the deceased towards defendant, if such threats are shown to have been made by deceased, whether recently made or not, may be considered by the jury in connection with all the other evidence in the case, in determining whether or not there was real or apparent danger to defendant at the time he fired the fatal shot."

4. *Same; same.*—On a trial under an indictment for murder, where the evidence showed that while the deceased and the father-in-law of the defendant were engaged in an altercation the defendant approached them, and upon his speaking to the deceased there followed the difficulty which resulted in the latter's death, a charge is erroneous and properly refused which instructs the jury "that if the defendant approached the deceased in a quiet and orderly manner, that deceased replied to him in an angry manner, and knocked defendant down, and that defendant reasonably and honestly believed that deceased struck him with a pistol, and reasonably and honestly believed that deceased had a pistol in his hand as defendant arose after he was knocked down and that his purpose was to do defendant serious bodily harm, and the circumstances were such as to reasonably produce such belief in defendant's mind, situated as defendant was at the time, and no reasonable and safe avenue of escape was open to defendant, then defendant had the right to anticipate his assailant and fire first, and this rule would not be changed even though it should turn out that defendant was mistaken as to his belief that deceased had a pistol in his hand."

5. *Same; same; reasonable doubt.*—On a trial under an indictment for murder, a charge is erroneous and properly refused which instructs the jury "that if, after looking at all the evidence in the case, your minds are left in such a state of uncertainty that you can not say beyond a reasonable doubt whether the defendant was at fault in bringing on the difficulty, and whether he acted upon the well grounded and reasonable belief that it was necessary to shoot and take the life of Arthur York to save himself from great bodily harm or death, or he shot before such impending necessity arose, then this is such a doubt as will entitle the defendant to an acquittal."

6. *Same; same; same.*—In such a case, a charge is erroneous and properly refused which instructs the jury "that if the testimony points in two directions, one to the guilt of the defendant, and the other to his innocence, and both are equally reasonable, they are bound to accept that which points to his innocence and acquit the defendant, if they believe that phase of the testimony."

7. *Same; same; same.*—In such a case, a charge is erroneous and properly refused which instructs the jury "that if the testimony shows two theories, one tending to the defendant's guilt and the other to his innocence, and both are reasonable, they must acquit the defendant, if they believe the theory tending to his innocence."

APPEAL from the County Court of Cleburne. Tried before the Hon. T. J. BURTON.

The appellant, J. D. Campbell, was indicted and tried for the murder of Arthur York, was convicted of murder in the first degree, and sentenced to the penitentiary for life.

The uncontroverttd evidence was that the homicide occurred on the premises of one W. S. Pruett, in Cleburne county, at a public sale; that Burrell Messer was the father-in-law and that Bud Messer was a brother-in-law of defendant; that the homicide occurred near a barn or crib on the premises of said Pruett, and some 40 or 50 yards from a dwelling house on said premises; that defendant Campbell, walked from about said dwelling house to the point where the homicide occurred, and as he came to said point the deceased and Burrell Messer were engaged in a quarrel; that defendant Campbell walked up and spoke to the deceased, and that a few words were passed between them, when deceased knocked Campbell down, and that Campbell, as he arose, and before he was fairly erect, shot deceased through the head with a pistol, from the effect of which wound he died in a short while, without ever speaking.

There was some conflict in the testimony as to what was said by the defendant Campbell and the deceased, after Campbell walked up to where deceased and Messer were quarreling, and before deceased knocked him down. The testimony on behalf of the State tended to show that Campbell walked up and participated in the quarrel between deceased and Messer, and that he used very vile and opprobious epithets toward the deceased, before deceased struck him; while the testimony on behalf of defendant Campbell tended to show that he approached the deceased in a quiet and orderly manner, and quietly asked deceased not to curse the "old man," meaning Burrell Messer; that deceased

then cursed Campbell and said to him: "Do you take it up?" that Campbell replied: "Only that much, I don't want you to curse the old man"; and that thereupon the deceased struck Campbell on the head, knocking him down; that as he arose he drew his pistol, a self-acting one, from his pocket and shot deceased. The testimony on behalf of defendant also tended to show that deceased had his pistol, or a pair of knucks in his hand with which he struck defendant and that he had his pistol in his hand, as defendant was rising and when he fired the fatal shot.

The evidence on behalf of the State tended to show that deceased had nothing in his hand when he struck defendant, or when the shot was fired, and that his pistol was taken from his pocket by his friends after the fatal shot was fired. It was shown by the testimony on behalf of defendant that deceased had made some threats towards defendant a year or so before, but it was not shown that these threats had been communicated to defendant prior to the homicide. The other facts of the case are sufficiently stated in the opinion.

The defendant requested the court to give to the jury, among others, the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "The court charges the jury that any threats made by deceased towards defendant, if such threats are shown to have been made by deceased, whether recently made or not, may be considered by the jury in connection with all the other evidence in the case in determining whether or not there was real or apparent danger to defendant at the time he fired the fatal shot." (4.) "The court charges the jury that if the defendant approached the deceased in a quiet and orderly manner, that deceased replied to him in an angry manner, and knocked defendant down, and that defendant reasonably and honestly believed that deceased struck him with a pistol and reasonably and honestly believed that deceased had a pistol in his hand as defendant arose after he was knock down and that his purpose was to do defendant serious bodily harm, and the circumstances were such as to reasonably pro-

duce such belief in defendant's mind situated as defendant was at the time, and no reasonable and safe avenue of escape was open to defendant, then defendant had the right to anticipate his assailant and fire first, and this rule would not be changed even though it should turn out that defendant was mistaken as to his belief that deceased had a pistol in his hand." (15.) "The court charges the jury that if after looking at all the evidence in the case your minds are left in such a state of uncertainty that you can not say beyond a reasonable doubt whether the defendant was at fault in bringing on the difficulty and whether he acted upon the well grounded and reasonable belief that it was necessary to shoot and take the life of Arthur York to save himself from great bodily harm or death, or he shot before such impending necessity arose, then this is such a doubt as will entitle the defendant to an acquittal." (23.) "The court charges the jury that if the testimony points in two directions, one to the guilt of the defendant, and the other to his innocence, and both are equally reasonable, they are bound to accept that which points to his innocence and acquit the defendant, if they believe that phase of the testimony." (25.) "The court charges the jury that if the testimony shows two theories, one tending to the defendant's guilt and the other to his innocence, and both are reasonable, they must acquit the defendant, if they believe the theory tending to his innocence."

B. B. & W. H. BRIDGES and MERRILL & MERRILL, for appellant.—Whenever any act of a party is admissible in evidence, and is admitted, any declarations of the party, made at the time of the act, and tending to explain or shed light on the act, are admissible as part of the *res gestae.—Williams v. State,* 105 Ala. 96; *Harris v. State,* 96 Ala. 24; *Martin v. State,* 77 Ala. 1; *Burton v. State,* 115 Ala. 1; *Kilgore v. Stanley,* 90 Ala. 523; *Yarbrough v. Moss,* 9 Ala. 382; *M. & M. R. R. Co. v. Ashcraft,* 48 Ala. 15; *Hamilton v. State,* 10 Am. Rep. 22; 1 Greenleaf on Evidence, § 108; 21 Am. & Eng. Ency. Law (1st ed.), 99; *Masterson v. Phinizy,* 56 Ala. 336; *Tesney v. State,* 77 Ala. 33.

[Campbell v. The State.]

Under the statute as it now exists, and as it has been construed by this court, a charge requested, asserting a correct legal proposition, and which is not abstract or misleading, should be given, and its refusal is error. Code, 1896, § 3328; *Gibson v. State*, 89 Ala. 121; *Brown v. State*, 118 Ala. 111; *Eiland v. State*, 52 Ala. 322; *Orr v. State*, 117 Ala. 69; *E. T. V. & G. R. R. Co. v. Bayliss*, 77 Ala. 69; *Polly v. McCall*, 37 Ala. 20; *Harris v. State*, 96 Ala. 24.

On the trial of a party charged with murder, evidence of uncommunicated threats made by decedent against defendant is admissible in evidence, when it is shown that at the time of the homicide, deceased was making some demonstration, or overt act in consummation of such threats, and is competent to be considered by the jury in determining the *quo animo* of such demonstration, and who was the aggressor, and whether there was real or apparent danger to defendant at the time of the homicide.—*Roberts v. The State*, 68 Ala. 156; *Johnson v. The State*, (Miss.), 5 So. Rep. 95; *Holler v. The State*, 10 Am. Rep. 74.

CHARLES G. BROWN, Attorney-General, for the State. The court did not err in refusing to permit the defendant to prove the declarations made by him to the witness Lovejoy.—*Harris v. State*, 96 Ala. 24; *Tesney v. State*, 77 Ala. 33; *Martin v. State*, 77 Ala. 1; *Kilgore v. Stanley*, 90 Ala. 523. The court did not err in refusing the charges requested by the defendant.—*Gilmore v. State*, 126 Ala. 20; *Fountain v. State*, 98 Ala. 40; *Stone v. State*, 105 Ala. 60; *Bondurant v. State*, 125 Ala. 31; *Henderson v. State*, 77 Ala. 77; *Compton v. State*, 110 Ala. 24.

DOWDELL, J.—The defendant set up the plea of self-defense. The evidence was in conflict as to who was the aggressor. The evidence without dispute showed that the killing occurred at the home of one Pruett, on the occasion of a public sale, where a good many people were attending; that on said occasion the deceased and one Burrell Messer, who was the father-in-law of

[Campbell v. The State.]

the defendant, got into a quarrel, and were at the time near a crib a short distance from the dwelling house, and that the defendant was not present at the commencement of the quarrel between Messer and deceased, but came upon the scene later, and while the two were still engaged in the altercation of words, and came from the direction of the dwelling house. One Lovejoy was examined as a witness in behalf of the defendant, and testified, that witness and defendant were standing near the dwelling house, some distance from where deceased and Messer were, and were engaged in conversation relative to the settlement of a business matter between witness and the defendant, that from the place where witness and defendant were standing, witness could not see Messer and deceased near the crib. The defendant offered to prove by this witness, what he, the defendant, said, when he started to where Messer was, near the crib, which was objected to by the State, and the objection was sustained. It was stated to the court what the witness would testify as to the declaration of the defendant when he started to where Messer and the deceased were near the crib, and where the defendant became involved in the difficulty resulting in the death of the deceased, which tended to show that the defendant started to where Messer was, for the purpose of getting some money changed, with which to pay a debt to the witness. It is contended by counsel for defendant, that his going to the scene of the altercation between his father-in-law, Messer, and the deceased, and after the quarrel between the two had begun, being shown in evidence, it was competent for him to show his declarations upon starting, as a part of the *res gestae* of his act in going to where Messer and the deceased were. We think this contention is sound. Whenever evidence of an act is in itself competent and admissible as a material fact in the case, and is so admitted, the declarations accompanying and characterizing such act become and form a part of the *res gestae* of the act, and as such, are competent and admissible in evidence as being explanatory of the act. The sincerity of such declarations, or what weight may be given to the same, is a question for the jury. The court erred in exclud-

[Watkins v. The State.]

ing this testimony.—*Harris v. State,* 96 Ala. 24; *Tesney v. State,* 77 Ala. 33; *Martin v. State,* 77 Ala. 1; *Kilgore v. Stanley,* 90 Ala. 523; 1 Gr. Ev., § 108; 21 Am. & Eng. Ency. Law (1st ed.), 99.

Other exceptions reserved to the rulings of the court on the admission and exclusion of evidence are without merit. Moreover, the same are not insisted on in argument.

There were a number of written charges requested by the defendant, the greater part of which were given by the court. Of the written charges refused those numbered 1, 4, 15, 23, and 25, only, are insisted on in argument. Charge 1 was properly refused as being argumentative. The remaining charges above mentioned are possessed of infirmities rendering them bad, and for which similar charges have been condemned in one or more of the following cases: *Gilmore v. State,* 126 Ala. 20; *Fountain v. State,* 98 Ala. 40; *Stone v. State,* 105 Ala. 60; *Roden v. State,* 97 Ala. 54; *Bondurant v. State,* 125 Ala. 31; *Compton v. State,* 110 Ala. 24. These charges, in postulating an acquittal upon self-defense, are either faulty in that they are argumentative, or in the omission of some one of the constituent elements of self-defense.

The charges refused which are not insisted upon in argument, need no comment on their defects.

For the error pointed out the judgment of the trial court will be reversed and the cause remanded.