# Dilburn, *Admr., v.* L. & N. R. R. Co.

### *Action for Damages for Death of Passenger.*

(Decided June 18, 1908.  47 South. 210.)

1. *Carriers; Passenger; Stopping Train.*—It is the duty of a railroad to stop its trains at a passenger's destination long enough to give its passengers a reasonable time in which to alight.

2. *Same; Questions for Jury.*—The evidence in this case stated and examined and held to require a submission to the jury to determine whether a sufficient time was given a passenger to alight; whether the passenger proceeded with the ordinary prudence in and about alighting; whether there was a negligent jerk of the train when it started and whether the passenger was guilty of contributory negligence.

[Dilburn, Admr., v. L. & N. R. R. Co.]

3. *Same; Alighting; Contributory Negligence.*—Whether or not it is contributory negligence for a passenger to alight from a moving train, depends upon the speed of the train, and the condition of the passenger as to being encumbered with baggage.

4. *Same.*—Whether it is contributory negligence for a passenger in attempting to alight from a train, to hold to the rail of the car, depends on the speed of a train and the character and condition of the station platform or grounds.

5. *Same; Evidence.*—It was not competent for plaintiff to show that his decedent had been disabled in the war, in an action by plaintiff for decedent's death, caused by alighting from a moving train.

6. *Appeal and Error; Harmless Error; Evidence.*—Where the question was answered and no motion was made to exclude the answer, the exclusion of the question was harmless.

7. *Witnesses; Impeachment.*—A party cannot test the accuracy of the judgment of one of his own witnesses as to length of time by holding a watch on him, or by asking him how far he could have walked from the time the train stopped until the intestate was killed, or whether he could have walked 50 yards during that time.

8. *Same; Necessity for Predicate.*—No predicate having been laid, it was not proper to admit statements alleged to have been made by a conductor, and made after the accident happened, as to what occurred; such testimony being competent only for the purpose of impeachment.

9. *Same; Cross Examination; Testing Accuracy.*—It being within the discretion of the trial judge as to how far he will allow cross examination on irrelevant matters, to test the accuracy of a witness' knowledge, and any test allowed should be made so that the jury can judge of the accuracy of the answers, it is not permissible to enquire of a witness as to what length of time three minutes are, etc., and permit the counsel asking the question to hold a watch while the witness was answering, as this is not observable by the jury.

10. *Carriers; Alighting Passengers; Evidence.*—It was permissible to show how long the person killed in alighting from a train had lived near the station, as tending to show whether he was familiar with the place where he attempted to alight, and whether he was guilty of negligence in attempting to alight; but it was not competent to show how long the train customarily stopped there, since, if it stopped a sufficient length of time to enable plaintiff to alight in his then condition, any custom was immaterial.

11. *Evidence; Opinion.*—The witness being experienced and competent to testify concerning the subject, a conductor may properly be allowed to state whether or not a stop of a minute or a minute and a half was sufficient to enable passengers to alight.

12. *Same.*—One may testify that a person seemed to be very feeble and that such person seemed to be crippled.

13. *Same; Expert Testimony; Qualification.*—A witness not shown to be an expert in the management of an engine or the running of a train, is not qualified to answer the question, "When the engine is in that position, just turned, and you start it off and put the steam to it, doesn't that create a jerk in the train?"

APPEAL from Escambia Circuit Court.

Heard before Hon. J. C. RICHARDSON.

Action by J. S. Dilburn, administrator, against the Louisville & Nashville Railroad Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

The exceptions to evidence and the nature of the action are sufficiently stated in the opinion of the court. The following pleas were filed to the complaint:

(1) The general issue. (2) "Defendant says that the plaintiff's intestate contributed directly and proximately to his own injury and death by stepping off of a moving train and holding onto the rails thereof, whereby he was thrown to the ground and run over." (3) "Defendant says that plaintiff's intestate was a passenger upon one of its trains, having a ticket which entitled him to travel to the station on defendant's railroad known as Wallace; that said train was stopped at Wallace long enough for plaintiff's intestate to have gotten off said train in safety; but that he failed to do so, and then, waiting until said train was in motion, undertook to step from said train, and thereby contributed directly and proximately to his own injury and death." (4) "Defendant says that plaintiff's intestate was a passenger upon one of its trains, having a ticket which entitled him to ride to a station on defendant's road known as Wallace; that said train was stopped at Wallace a sufficient length of time for plaintiff's intestate to have gotten off or alighted from said train in safety; but he failed to get off said train while said train stopped, but waited until said train was in motion, and undertook to step from said train while holding in his right hand a sack filled with various items, holding to the rail with his left hand, and when stepping from said

train he placed one leg across the other, and by this manner of alighting contributed directly and proximately to his own injury and death."

: The following demurrers were filed to the second plea: "(1) Said plea fails to allege that plaintiff's intestate negligently stepped off said moving train. (2) Because said plea fails to allege that said train was stopped for a time reasonably sufficient to enable plaintiff's intestate to get off said train by the exercise of due care and diligence. (3) Said plea fails to allege that plaintiff's intestate failed to exercise due care and diligence in getting off said train. (4) Said plea alleges that plaintiff's intestate contributed directly and proximately to his own injury and death by stepping off a moving train and holding onto the railing thereof, but fails to allege that said conduct on the part of plaintiff's intestate was negligent, and that said negligent conduct contributed to his injury and death." To the third and fourth pleas: "(1) Because said pleas fail to allege that said train of defendant was brought to a full stop at said time of injuries complained of. (2) Said pleas fail to allege that defendant's agents or servents in charge of defendant's train gave notice to plaintiff's intestate that said train had reached his point of destination. (3) Said pleas fail to allege that said train was brought to a full stop at the point of injury complained of, and caused to so remain for a length of time which was reasonably sufficient to enable plaintiff's intestate to get off of said train. (4) Because said pleas fail to allege that plaintiff's intestate negligently waited until said train was in motion before leaving said train. (5) Because said pleas fail to allege that plaintiff's intestate negligently undertook to step from said train, and negligently held

onto the railing thereof while train was in motion thereby directly and proximately contributing to his injury and death."

STALLINGS & NESMITH, for appellant. The court erred in overruling plaintiff's demurrer to plea 2 as answer to the 1st count of the complaint.—141 Ala. 215; 136 Ala. 191; 135 Ala. 571; 122 Ala. 231; 103 Ala. 160; 97 Ala. 220 91 Ala. 422. On the same authority the court erred in overruling demurrer to plea 2 as an answer to the 4th count. The court erred in overruling demurrer to plea 2, as an answer to the 1st and 4th count.—Authorities supra.—On these same authorities the court erred in overruling demurrers to plea 4.— It was competent to show that intestate was disabled during the war.—*Watkins v. Bir. R. & E. Co.,* 120 Ala. 152. The court erred in sustaining objections to proof of how long the person killed had lived near the depot where he was killed.—39 South. 211. A person may testify that another seemed to be feeble or that he seemed to be cripple.—*Watkins v. Bir. R. & E. Co. supra.* The defendant should have been permitted to show what the conductor said after the accident.—*M. & E. R. R. Co. v. Stewart,* 91 Ala. 423; *Frazer v. S. & N. R. R. Co.,* 81 Ala. 185; *Forshee's Case,* 125 Ala.; *Brown's Case,* 121 Ala. 221. The court erred in giving the affirmative charge for the plaintiff. *Southern Ry. Co. v. Lolla,* 135 Ala. 376; *K. C. M. & B. R. R. Co. v. Matthews,* 39 South. 212; *Sweet v. Bir Ry. L. & P. Co.* 136 Ala. 166.

M. A. RABB, and GEORGE W. JONES, for appellee. Pleas of contributory negligence were good.—*Wickets v. R. R. Co.* 85 Ala. 600; *L. & N. v. Lee,* 97 Ala. 325; *Holmes' Case,* 97 Ala. 332; *Southern v. Arnold,* 114

[Dilburn, Admr., v. L. & N. R. R. Co.]

Ala. 191; *Bir. Ry. L. & P. Co. v. Bynum,* 139 Ala. 391. If there were any defects they were not pointed out by the demurrer.—91 Ala. 171; 100 Ala. 622; 101 Ala. 289. The defendant was entitled to the affirmative charge under its plea of not guilty.—*Railroad Co. v. Trammel,* 93 Ala. 350; *Railroad Company v. Hersong,* 97 Ala. 187; *Railroad Co. v. Dobbs,* 101 Ala. 219; *Russell v. Jones,* 101 Ala. 261; *Malone v. Rogers,* 102 Ala. 387; *McCarthys' Case,* 102 Ala. 200; *Martin v. Butler,* 111 Ala. 422; *Thomas v. Drennen,* 112 Ala. 670; *Central of Ga. R. R. Co. v. Letcher,* 69 Ala. 106.

SIMPSON, J.—This suit was brought by the appellant against the appellee for damages for the death of plaintiff's intestate, S. G. Dilburn, who was killed in attempting to alight from defendant's train. The counts of the complaint on which the case was submitted to the jury were counts 1, 2, and 4. Counts 1, and 4 simply charge, in general terms, that intestate's death was caused by negligence. The second count, as amended, charges that defendant's servants, while acting within the scope of their employment, "willfully, wantonly, and intentionally caused plaintiff's intestate, who was a passenger in the act of alighting, * * * to be run over by said train and killed." There is no controversy about the fact that said intestate was killed by being run over by a train of defendant at a station called Wallace on defendant's line of road. There is no evidence to support the charge of willfulness and wantonness, and it is not claimed; so it is not necessary to consider that count.

. The court gave the general charge in favor of the defendant, and it is insisted by the appellee that said charge was properly given, and that consequently it is unnecessary to consider the other assignments of error

insisted on by the appellant. Pleas alleging contributory negligence were filed, the gist of which is that although a stop of sufficient length was made at Wallace (the station to which intestate was traveling), yet said intestate waited until after the cars had started, and attempted to light, holding a sack, with various articles in it, in his right hand, and holding onto the railing, and placing one leg across the other. According to the different witnesses, the train stopped at Wallace from about five or six seconds to one, one and a half, two, and five minutes. The body of intestate was found on the track about one, two, or three car lengths from the place where the car came to a stop, or about 60 feet, and the train moved off slowly.

One witness testified that he was about 3 feet from the car when it stopped; that he saw intestate standing on the step of the car, holding by the hand rail; that when the train started there was a jerk, and "it jerked him around between the cars and the rails.. I saw him swing around. He was on the ground, on the ties on the ground, and the wheels had run over him"; that the car ran about 5 feet after starting before intestate was jerked off; that when he saw intestate standing on the steps he was about as far as across the house from him. This witness stated, further, that he did not see intestate when he fell, but saw him on the ground after he had fallen; that the car stopped about five or six seconds; that intestate had a sack in his right hand, with oranges, bananas, and two bottles of whisky in it. This witness was 14 years of age. Another witness testified that he saw intestate coming down the car step as the car was moving off, going about as fast as a slow walk, having a sack in one hand and holding on the railing with the other; that he either fell from the step or stepped off; that before he got off witness saw Watkins, the

flagman, with his hand on intestate, telling him not to step off, but that they would stop the train; that witness was within arm's length of the flagman, and saw him standing on the platform fronting intestate, putting up his hand, and telling intestate "not to step, that they would stop the train, but he stepped anyway." Another witness, who was a passenger, testified that when the conductor called "All out for Wallace" he saw intestate gathering his bundles to go out; that witness got up and went to the door, and when he got to the door the intestate was coming out of the door of the car just ahead of witness, and started to go on down the steps. "He sorter slacked up, got his bundles fixed, and taken hold of the iron, and made a step one way or the other, and that is the last I seen of him; went under the train some way." This witness went on to state that the train stopped long enough for people to get on and off; that he could not say where intestate was when the train started off. It was gradually moving when he started off. Witness did not see any one trying to prevent intestate from getting off; but some one rang the bell. He could not say whether it was before or after the car started that the bell rang.

The conductor then testified as to his experience as a conductor since 1889; that he made the usual announcements before and at the time of reaching Wallace; that the train stopped from a minute to a minute and a half, which was the usual time for stopping there; that several persons got on the car at Wallace, and some of them got off again, but intestate was the only passenger for Wallace; that he saw intestate just before reaching Wallace, when the station was announced, but did not see him again until after he had been run over; that there was baggage and express taken off at Wallace; that when the cars stopped witness went out on the sta-

tion platform and called out twice. "All out for Wallace," then went into the smoker, where he had last seen intestate, and, not finding him there, went on into the next car, and was told that intestate had gotten off; that he then started the train. The flagman testified that the train stopped two or three minutes; that he saw intestate coming down the steps, after the train had been put in motion, and told him to wait a minute, and not to get off the train—they would stop the train; caught hold of his coat to keep him from getting off, and told some one, standing on the platform, to pull the bell cord, and some one did pull it, but intestate stepped down; that the station platform was about 6 inches lower than the car steps, and the cars had moved about 40 feet when the intestate stepped off. Another witness, a citizen, testified to seeing the flagman put his hand on the intestate and ask him not to get off, that he would stop the train, and hearing the flagman call to some one to pull the bell cord, and to seeing intestate step off in the direction opposite to that in which the train was moving.

These were all of the witnesses who saw the accident. The evidence is not without conflict as to whether the interstate was on the step, preparing to alight, and fell off, or was in the act of stepping off, when he fell under the wheels of the car. There is a conflict in the testimony as to just how long the train stopped. It was the duty of the conductor to stop the train long enough for the intestate to move from his seat to the platform and alight, and it was a question for the jury to determine, from the evidence, whether sufficient time was given the intestate to alight, whether he was proceeding with ordinary prudence to reach the step, or was in the act of stepping, and whether there was such a jerk as to constitute negligence. It was for the jury to determine,

also, from the evidence, whether it was contributory negligence for the intestate to attempt to alight while the cars were in motion, which would depend upon the speed at which the train was running, the condition of the intestate, as to being incumbered with baggage, etc.— *Central, etc., Co. v. Miles,* 88 Ala. 256, 262, 263, 6 South. 696; *K. C. M. & B. R. R. Co. v. Matthews,* 142 Ala. 298, 39 South. 207, 211. It was error, therefore, in the court to give the general charge in favor of the defendant.

The first and second assignments of error are to the ruling of the court in overruling plaintiff's demurrer to plea No. 2 to counts 1 and 4 of the complaint. These counts charge negligence generally, and the substance of pleas 2 and 4 is that plaintiff was guilty of contributory negligence "by stepping off of a moving train and holding on the railing thereof." This court has frequently held that it is not negligence per se to step from a moving train. That depends upon the speed of the the train and other circumstances, such as the age and strength of the party, whether he was incumbered with baggage, etc.—*K. C. M. & B. R. R. Co. v. Matthews,* 142 Ala. 298, 39 South. 207. The same may be said as to holding onto the rail. If the train is moving slowly, and the station platform is on a level with the car, it might be wise to hold onto the rail until the passenger had adapted his gate to the speed of the train. Consequently these assignments are well taken.

For like reasons the court erred in overruling plaintiff's demurrer to the defendant's plea No. 3.

For like reasons, also, the court erred in overruling the demurrer to plea No. 4; and, in addition, said plea does not allege that the intestate had any notice of the fact that the train had reached the station—Wallace.

The mistake in the record, in using the word "defendant" where it should be "plaintiff," is self-correcting, as the demurrers were to pleas filed by the defendant.

There was no error in the court sustaining the objection of the defendant to the question to the witness, J. S. Dilburn, "Was he disabled in the War?" It was not proper to ask how he was disabled, and he may have been disabled during the War and entirely recovered therefrom.

If there was error in sustaining the objection to the question to the witness Dr. Tippins, "By the wheels?" it was without injury, as the question was answered, and the only objection was to the question; no motion being made to exclude the answer.

There was no error in the court's sustaining objections to the questions by the plaintiff to his own witness, Dr. Tippins, seeking to test the accuracy of his judgment as to how long the train stopped, by holding the watch on him. The witness had testified, according to the best of his judgment, how long the train stopped; and this was an evident effort to impeach the accuracy of his statement by the party who had introduced him. This is not the proper way to test the accuracy of the statement or the recollection of the witness.

For the same reason there was no error in sustaining the objection to the questions by plaintiff to the same witness: "How far could you have walked from the time the train stopped until Dr. Dilburn was killed?" and "Could you or not have walked 50 yards from the time the train came to a full stop up until he was killed?" As a further reason, the time of the stopping of the train is not the question inquired about in these questions.

The court erred in sustaining the objection to the question to the witness Owens, "How long had he lived that near the depot?" The fact that the deceased had

lived within 200 yards of the depot for a long or short time would have a tendency to throw some light on the question as to whether he was familliar with the place where he attempted to alight, and that would have some bearing on the point as to whether it was negligent in him to make the attempt.—*K. C. M. & B. R. R. Co. v. Matthews,* 142 Ala. 298, 39 South, 208, 212 (second column).

The court erred in excluding the answers of the witness · Owens, "He seemed to be very feeble," and "He seemed to be ·crippled."—*Thornton v. State,* 113 Ala. 43, 46, 47, 21 South. 356, 59 Am. St. Rep. 97.

There was no error in sustaining the objection to the question to the witness Thompson, "How long is it the custom of that passenger car to stop?" etc. .This was irrelevant. If the train stopped for a sufficient length of time for the plaintiff, in his known condition, .to get off, it matters not what had been its previous custom.

There was no error in sustaining the objection to the questions as to the conversations by the conductor, the night after the accident, as to what occurred. The only purpose that could be served by proving what the conductor said would be to impeach his testimony, and no predicate had been laid. The conductor had not testified at all when these questions were asked.

There was no error in overruling the objection to the question to Jennings, the conductor, as to whether a minute, or a minute and a half, was a sufficiently reasonable time for passengers to alight. The witness was experienced and competent to testify on this subject.

There was no error in the court's sustaining the objections to the questions to the witness Watkins "to · tell what three minutes are," etc.; the counsel holding his watch in order to test the accuracy of the answers. In addition to the fact that it is a matter which rests

in the discretion of the trial judge as to how far he will allow cross-examination on irrelevant matters, in order to test the accuracy of the witness' testimony (5 Mayfield's Dig. p. 978, § 117), any test allowed should be so made that the jury can judge of the accuracy of the answers, which they could not do, by the watch being held in the hand of counsel and observable only by him.

There was no error in sustaining the objection to the question to the witness Watkins, "When it is in that position, just turned, and you start it off, and put the steam to it, don't that create a jerk in the train?" The witness is not shown to be an expert in managing an engine or running a train. Besides, it is impossible to say, from what preceded, just what state of affairs is referred to.

The judgment of the court is reversed, and the cause remanded.

Reversed and remanded.

TYSON, C. J., and DOWDELL and DENSON, JJ., concur.