# Louisville & N. R. R. Co. *v.* Dilburn.

## *Damage for Death of Passenger.*

(Decided April 16, 1912.　Rehearing denied June 29, 1912.
59 South. 438.)

1. *Appeal and Error; Law of Case.*—The rulings made on a prior appeal constitute the law of the case unless it is the judgment of the court that they are incorrect.

2. *Same; Harmless Error; Pleadings.*—Where other pleas remain in the record forming part of the issues and presenting the identical issues attempted to be raised by pleas to which demurrer was sustained, the sustaining of such demurrer was harmless, if error.

3. *Same; Evidence.*—It is not error to exclude the answer of a witness where such witness is subsequently permitted to testify fully concerning the matters inquired about.

4. *Trial; Reception of Evidence; Objections.*—Where evidence is responsive to the questions, objection cannot be first made by a motion to strike.

5. *Same.*—A party is not entitled to the exclusion of evidence brought out by itself in the examination of a witness where the answers were responsive to the questions.

6. *Same; Competent and Incompetent.*—A party may not bring incompetent evidence into a case by connecting it in the same question or answer with competent evidence; nor can he shift on the court the duty of separating the competent from the incompetent, or put the court in error for a failure to assume such duty.

7. *Witnesses; Examination.*—Where a witness has previously given the testimony sought by a question, it is not error to exclude such question.

8. *Evidence; Conclusion; Best Judgment.*—Where a witness was asked how long a train stopped at a particular station at which a decedent was killed while attempting to alight, it was proper for the witness to give his best judgment, where he had an opportunity to consult a timepiece.

9. *Same; Hearsay.*—Where a passenger was killed while attempting to alight from a moving train, it was competent for the conductor to testify that he made inquiry as to whether decedent had left the train and as to the result of the inquiry; but the details of the conversation as to decedent's whereabouts were hearsay and not admissible.

10. *Same; Former Trial; Stenographic Report; Predicate.*—Where no sufficient predicate was laid for its admission the stenographic report of the testimony of a witness on a former trial was properly excluded.

[Louisville & N. R. R. Co. v. Dilburn.]

11. *Carriers; Passengers; Place of Injury; Evidence.*—Evidence as to the surroundings at the place of injury and decedent's familiarity and acquaintance therewith, or lack of it, was admissible in an action for his death as a passenger.

12. *Same; Time to Alight; Instructions.*—Where the action was for the death of a passenger while attempting to alight, a charge that the carrier was bound to exercise the highest degree of care, diligence and skill exercised by those engaged in the carriage of passengers by railroad. and that, if decedent was a passenger on defendant's train, and while such a passenger, lost his life as a direct and proximate consequence of defendant's failure to exercise the care and diligence required by law, the jury should find for plaintiff, unless decedent was guilty of negligence contributing to his death, the burden of proof of which was on defendant; and that the mere fact that decedent undertook to alight from the train while in motion would not constitute contributory negligence unless the jury was reasonably satisfied from the evidence that the risk was such that a man of ordinary care and prudence would not have undertaken it under the circumstances, was proper.

13. *Same.*—Where the passenger was killed while alighting after the train had started to leave his point of destination, requests to charge as to his contributory negligence which failed to hypothesize knowledge on his part that he had arrived at his destination, or that the train had stopped there, or that he was notified of the train's arrival, or which failed to hypothesize that such negligence, if any, was the proximate cause of his death, etc., were properly refused.

14. *Same.*—Where the question of the contributory negligence of a passenger killed while attempting to alight from a moving train at his destination. was for the jury under the facts hypothesized, charges asserting that if the- facts were found, he was guilty of negligence as a matter of law, were properly refused.

15. *Same; Destination; Alighting; Care Required.*—Where a train has reached a passenger's destination those in charge of the train must exercise the highest degree of practical care to afford the passenger sufficient time and opportunity to alight, and if the usual sufficient time is not given. and the passenger is compelled to go on to the next station, or if a sudden start is made while he is in the act of alighting, and injury occurs, the carrier becomes liable.

16. *Same.*—The carrier's agent or servant in charge of passenger trains are bound to presume that there may be persons in the cars desiring to alight, and unless they know that there is no such passenger, they are under duty not to start the train until they have given sufficient time to allow such passengers to alight; and they are not entitled. after waiting a reasonable time, to start the train without using reasonable care to ascertain if there are passengers in the act of alighting; if a reasonable time has been given. however, those in charge of the train are not required to know that all persons intending to stop at that station have alighted in safety.

17. *Same.*—Where an infirm passenger over sixty years of age, and encumbered with bundles, attempted to alight at his destination after the train had started to leave the station and against the protest of the flagman, who testified that he requested the decedent not

to step off until the train could be stopped, the carrier was entitled to have the jury instructed that if the passenger stepped from the car while it was in motion and against the protest of a flagman, acting within the scope of his authority, who offered to stop the train to let decedent get off, but notwithstanding this decedent stepped off, decedent assumed all the risk of alighting safely, and defendant was not liable.

APPEAL from Escambia Circuit Court.

Heard before Hon. J. C. RICHARDSON.

Action by J. S. Dilburn, as administrator, against the Louisville & Nashville Railroad Company for the death of his intestate while a passenger. Judgment for plaintiff and defendant appeals. Reversed and remanded.

The facts sufficiently appear from the opinion of the court.

The following charges were given for the plaintiff: (1) "The court charges the jury that a common carrier of passengers owes to its passengers the duty to exercise the highest degree of care, skill, and diligence, known to very careful, skillful, and diligent persons engaged in like business." (2) "The court charges the jury that the law requires the highest degree of care, diligence, and skill by those engaged in the carriage of passengers by railroads, known to careful, diligent, and skillful persons engaged in such business, and if you are reasonably satisfied from the evidence in this case that the deceased, Dr. Dilburn, was a passenger on defendant's train, and while such a passenger lost his life as a direct and proximate consequence of the defendant's failure to exercise the care and diligence required by law, you must find for the plaintiff, unless you are further reasonably satisfied from the evidence that Dr. Dilburn was also guilty of negligence which contributed proximately to his death, and the burden of proof of such contributory negligence is upon the defendant." (4) "Even though you may believe from the

evidence in this case that Dr. Dilburn undertook to alight from the train while it was in motion, such conduct would not constitute contributory negligence, unless you are reasonably satisfied from the evidence that the risk taken by Dr. Dilburn in so attempting to alight was such risk as a man of ordinary care and prudence would not have undertaken under the circumstances."

Charge 11 refused to the defendant is as follows: "The court charges the jury that if they believe from the evidence that plaintiff's intestate, Dr. Dilburn, voluntarily stepped off the car while it was in motion, and against the earnest protest of the defendant's servant who was the flagman of said train, and was acting within the scope of his employment, and who offered to have the train stopped to let him get off, and notwithstanding this he stepped off of said car, he then assumed all the risk of alighting safely, and plaintiff cannot recover."

RABB & PAGE, for appellant. No brief reached the Reporter.

STALLINGS & DRENNEN, and LEIGH & LEIGH, for appellee. No brief reached the Reporter.

MAYFIELD, J.—Plaintiff's intestate was a passenger on defendant's train from Flomaton to·Wallace, and was killed while alighting from the train, at his destination, by falling or being thrown under the train, which ran over or against him.

Intestate was aged, being between 65 and 75 years old, was lame, disabled in one of his arms or shoulders, from a wound received in' the war between the States, and from some cause was also lame in one of his legs, and was therefore in a much enfeebled condition. He

was at the time also incumbered with bundles or packages, consisting of two quarts of whisky, bananas, etc., which he carried in a sack or sacks. There was, moreover, some question as to whether or not he was under the influence of intoxicants at the time of his death.

The issues raised and attempted to be raised by the pleadings were: First, wanton negligence or willful injury on the part of the defendant's agents; but, as was said in the opinion in this case on a former appeal, there was no evidence tending to support this theory, and it is not insisted upon, and it need not be considered. Second, simple negligence, on the part of the defendant's agents, in not stopping the train at Wallace a sufficient length of time for plaintiff's intestate to safely alight therefrom, and again in starting the train with a jerk or lurch in such manner as to throw plaintiff's intestate from the train or cause him to fall therefrom in his attempt to alight. Third, the contributory negligence of intestate in failing to safely leave, or alight from, the train at his destination, within a reasonable time after it was brought to a stop for that purpose, and after he was aware that a stop had been made for that purpose; and also in alighting from the train, when the same was in motion, while in his enfeebled condition, and while incumbered with bundles, and against the earnest protest of defendant's flagman, and notwithstanding the flagman's assurance that the train would be stopped so that he could alight in safety— by which action of intestate, after such warning, assurance, and protest, he was killed as the proximate result of his own negligence.

These issues were found in favor of plaintiff, verdict and judgment being rendered in his favor for $2,000; and from such judgment this appeal is prosecuted.

[Louisville & N. R. R. Co. v. Dilburn.]

Many of the questions raised on this appeal were passed upon on the former appeal; and such rulings on the former appeal we decline to here reconsider, being satisfied of their correctness.

The first error insisted upon was the sustaining of the demurrer to plea No. 2. There appear of record two pleas numbered "2," and we are unable to know as to which the demurrer was sustained, or.as to which the error is assigned; but the question is immaterial, because if there was error as to either it was without possible injury, for the reason that there were other pleas upon which the case was tried, which raised the identical issues attempted to be raised by both of these pleas. The same evidence was admissible, with these pleas out, that would have been admissible, with them in. They did not attempt to raise any issue different from those raised by a number of other pleas as to which the demurrer was overruled.

There is nothing in either the second or the third assignment, as to objections to evidence descriptive of the place of the injury; and, besides, no objections were interposed to the questions, but only to answers which were responsive to the questions asked.

As was ruled on the former appeal, it was competent to describe the surroundings at the place of the injury, and the intestate's familiarity, or lack of familiarity and acquaintance therewith.

The trial court properly excluded the answer of the witness, McDavid, as to the time when he first paid attention to the length of time the train stopped. The witness had stated that he "reckoned" it was half an hour; but, even if error, the witness was subsequently allowed to testify fully as to the matter inquired of.

There was, of course, no error in declining to exclude all the testimony of the witness McDavid with respect

to the length of time the train was stopped. Some of this evidence was brought out by the appellant, and, of course, he could ask to have that excluded.

Moreover, his best judgment as to the length of time the train was stopped was admissible. The best any witness could do would be to give his best judgment as to the length of time, provided he had had no opportunity to consult a watch or clock.

There was no error in the court's excluding the evidence of the conductor, as to what the passengers told him, concerning whether or not intestate had left the train. It was competent for him to testify that he made inquiry of a certain passenger, and the result of his inquiry, but not to give in detail the conversations between him and other passengers as to the whereabouts of intestate. A part of the excluded testimony was competent, and a part of it was incompetent, and appellant should have separated it.

A party will not be allowed to inject into a trial incompetent evidence, by connecting it, in the same question or answer, with competent evidence. He should separate the two. He cannot shift that duty upon the court, nor put the court in error for failure to assume the duty.

The trial court did not err in excluding the stenographic report of the evidence of the witnesses Dilburn and others, on a former trial. A sufficient predicate had not been laid for its admission, and some of this evidence offered was clearly not admissible, and for its admission no sufficient predicate could have been laid. The report was offered as a whole.

There was no error in the giving of any of the charges requested by the plaintiff. They state the law correctly, as announced by this court in a great number of cases. See *Burgess' Case,* 143 Ala. 364, 367, 42

South. 35; *Roebuck's Case,* 132 Ala. 413, 31 South. 611; *Crowder's Case,* 130 Ala. 256, 30 South. 592; this case (former appeal) 156 Ala. 228, 47 South. 210; *Matthews' Case,* 142 Ala. 300, 39 South. 207.

There were refused to the defendant 31 requested charges. Many of them were identical with others, as attempting to assert the same propositions of law. Each and every one of these, except that numbered "11," was properly refused, for one or more of the following reasons:

Many of them (as stated on former appeal) wholly fail to hypothesize knowledge on the part of the intestate that he had arrived at his destination, or that the train had stopped thereat; or to hypothesize that he was notified of the train's arrival, which facts might have been necessary to render him guilty of negligence in not alighting from the train within a reasonable time after it was stopped for that purpose. Many of them fail to hypothesize that the negligence attempted to be imputed to him by the charges was the proximate cause of his injury, and many of them do not hypothesize facts sufficient to conclusively impute to the intestate contributory negligence in leaving the train while in motion, under the conditions hypothesized.

In other words, it was a question for the jury, under the facts hypothesized, to say whether or not the intestate was guilty of contributory negligence; yet the charges, or some of them, state as matter of law that, under that state of facts, he was guilty of contributory negligence. This was pointed out in the opinion on former appeal. Some of the charges were argumentative, and some possessed misleading tendencies. Except that numbered "11," each of the charges refused to the defendant was subject to one or more of these defects.

The law has been repeatedly declared by this and other courts, anent the respective duties and liabilities of carrier and passenger as involved in questions of personal injuries sustained by the latter in alighting, or attempting to alight, from moving trains.

The law is thus stated by Mr. Hutchinson:

"When the conveyance has reached the destination of the passenger, the carrier must exercise the highest degree of practicable care, diligence, and skill in affording the passenger sufficient time and opportunity to alight, and if the usual sufficient time be not given to him to alight, and he is compelled to go on to the next station, or if a sudden start of the conveyance be made whilst he is in the act of alighting, and an injury is occasioned to him thereby, it will be negligence in the carrier for the consequences of which he will be responsible."—Carriers, vol. 2 (3d Ed.) § 1118, pp. 1307, 1308.

"Those in charge of the trains are bound to presume that there may be such persons in the cars, and, unless they know there are not, they have no right to start the trains until they have waited long enough to allow such passengers to alight; nor, even after waiting a reasonable time for such persons to get off, have they a right to start the trains without using reasonable care to ascertain if there are such persons in the act of getting off. It certainly would not be permissible for them to be so reckless of the lives and limbs of passengers as to start the trains when they know, or with reasonable care might know, that passengers are in the act of alighting. Where, however, this reasonable time has been given, those in charge of the train are 'not required,' it is said, 'to do' what in many cases would be impossible to ascertain—'to know' that all passengers intending to stop at that station have alighted in safety."
—Id. § 1118, pp. 1311, 1312; *Highland Ave. & B. R. Co.*

*v. Burt,* 92 Ala. 291, 9 South. 410, 13 L. R. A. 95; *Bir-mingham Union Ry. Co. v. Smith,* 90 Ala. 60, 8 South. 86, 24 Am. St. Rep. 761.

"In a leading case upon the subject it is said: 'All the duty the law imposes upon a conductor acting as the agent of a corporation, in order to comply with the obligation of the carrier to a passenger, is to carry him safely to his point of destination, announce the arrival of the train at the station, and give him a reasonable opportunity to leave the cars. When this is done, the duty of the conductor ceases. And when the servants of a corporation engaged in the business of a common carrier afford passengers a reasonable time to leave the cars after arrival at the end of their journey, they have the right, at the expiration of such reasonable period, to presume that all passengers, whose place of destination is then reached, have done what is customary for passengers in like circumstances to do, to wit, have left the cars.'"—Id. § 1119, pp. 1313, 1314.

In the case of *Central Railroad & Banking Co. of Georgia v. Letcher,* 69 Ala. 106, 44 Am. Rep. 505: "Plaintiff having boarded defendant's passenger train, for a lawful purpose, on its arrival at one of the regular stations on the line of its railroad, was detained by his business after the train had started on its journey; and while the train was moving from the depot, its speed increasing each moment, he, of his own accord, to prevent being carried off, and without notifying any of defendant's employees of his presence, and without requesting any of them to slow or stop the train, and without any effort to arrest its progress, walked from the platform of one car to that of another, and with papers in his right hand descended the steps of the car and jumped from the moving train at right angles thereto and fell, and in the fall his left arm was caught

under the wheel of the car and crushed. Held, that the injury sustained by the plaintiff was attributable directly and immediately to his own thoughtless and reckless act, and he can (could) not therefore recover, though the defendant was negligent in not giving the signals required by the statute, before and at the time the train left the station."

In the case of *Harvey v. Chicago & A. Ry. Co.*, 221 Ill. 242, 77 N. E. 569 (a case similar to this), it was said by the Illinois Supreme Court that: "After the consideration of all of the evidence, the Appellate Court, in its finding of facts, found that the clear preponderance of the evidence showed that appellant was expressly warned by the conductor not to alight until the train came to a stop, and that the light afforded by the lanterns carried by the brakeman and conductor was sufficient to enable him to see the platform and assure himself that the train had come to a stop if he had been in the exercise of ordinary care for his own safety. This finding is based upon evidence about which no question has been raised, and if the appellant was not in the exercise of ordinary care for his own safety, and was expressly warned by the conductor not to alight until the train had stopped at the platform, he could not recover."

J. P. Watkins, the flagman, testified as follows: "I remember the time Dr. Dilburn was killed at Wallace. The train stopped at Wallace on that occasion. After it was first stopped, it was two or three minutes before it was again put in motion. The first time I saw Dr. Dilburn after the train stopped at Wallace it was again when the train was put in motion. He was then coming down the steps. At that time I put my hand on him and told him not to get off until we could stop the train. I ordered the train stopped. He stepped off just

as I put my hand on him. It was about 40 feet from where the train began to move to where he stepped off. He had a burlap sack of some kind. I don't know what was in the sack. I did not see it afterwards. When he stepped off, he stepped off sideways, or backwards, with his back to the engine, and stepped off crosslegged. When he stepped off he fell and rolled under the train. The train was going about 2 or 2½ miles an hour when he stepped off. When I saw him coming off the steps, I got him by the coat that way. I placed my hand up there with a very slight hold on his coat. I told him not to get off until I could stop the train. He did not pay any attention to me. He didn't seem to hear me, and stepped off anyway. I did not know whether or not he was under the influence of liquor. He stepped off with his back to the engine and his legs crossed and fell under the train. I spoke to him in an ordinary tone when I told him not to get off."

A. D. Kelly, being sworn and examined as a witness on behalf of defendant, testified as follows: "I am in the mercantile business and agent for the Louisville & Nashville Railroad Company at Wallace. Was engaged in the same business on February 29, 1904. I remember the occasion when Dr. Dilburn was run over and killed at Wallace. In my judgment the train remained stationary after it stopped before it began to move again a minute or more. I first saw Dr. Dilburn coming out of the car door while the train was in motion. He came down the steps and fell off. I asked him not to step off, and Mr. Watkins, the flagman, also asked him not to step off. He had in his hands, the best I can remember, two paper sacks, or sacks of some kind. Two bundles. One sack had some fruit in it and the other had some whisky; the best I remember, two quart bottles of whisky. When he stepped off the train, he step-

ped almost in an opposite direction from that which the train was moving." (Tr. p. 59.) "Yes, I was standing on the coach steps when Dr. Dilburn came out of the smoking car. From the time the train started to the time it stopped it had gone about 35 or 40 feet. While it was moving it was going about 3 to 5 miles an hour, I would judge; about as fast as a man could walk. When I told Dr. Dilburn not to get off, I was on the steps of the ladies' coach. Mr. Watkins was on the station platform. He walked along opposite Dr. Dilburn about 10 or 15 feet. The Doctor fell off a little about where Mr. Watkins stopped walking beside the train. I saw Mr. Watkins put his hands on the Doctor. I saw the Doctor fall. Mr. Watkins was going right along with the train all the time from the time he put his hands on Dr. Dilburn's shoulder until he fell. He was walking along beside the train at a medium gait."

This evidence, if believed, was sufficient to warrant the jury in finding that the intestate assumed the risk of alighting from the moving train, and that his death was the proximate result of failing to obey or heed the request of the defendant's agents not to alight while the train was in motion; and, if true, would, in the absence of wanton or willful injury on the part of the defendant or of its agents, preclude recovery by the plaintiff.

The defendant had the right to have the jury instructed upon this theory of the case, and upon this phase of the tendencies of the evidence; and a failure and declination so to do would be error, provided a proper charge was properly requested in writing.

Charge "11," we think, was a correct and proper charge upon this theory of the case, and was applicable to the evidence above set out; and its refusal was therefore error.

It results that for this error the judgment of the circuit court must be reversed, and the cause remanded.

Reversed and remanded. All the Justices concur, except DOWDELL, C. J., not sitting.