# Rigell v. The State.

## Manslaughter.

(Decided June 19, 1913. 62 South. 977.)

1. *Homicide; Provocation to Reduce.*—The killing of a paramour of one's wife is reduced to manslaughter, whether it be immediately after detecting him in the act, or after detecting him in a compromising position; the difference being that when caught in the act the provocation is sufficient as a matter of law, while in the other instance its sufficiency is for the jury.

2. *Same; Degree.*—Where the verdict was for manslaughter, any error in instructions as to passion that will reduce a killing to manslaughter is harmless.

3. *Same; Self-Defense.*—Where the deceased became the assailant by drawing his pistol, defendant was not required to wait, but could act on appearances, and do so promptly.

4. *Same; Duty to Retreat.*—A person in his home is under no duty to retreat before an assailant, who is a trespasser.

5. *Same; Evidence.*—It was permissible to show that when deceased was advised by one, whom deceased told that he had an engagement with defendant's wife for that night, to be careful, he exhibited a pistol and said, "this is my protector," defendant having testified that he had warned deceased to remain away from his home, and that on returning home that night saw some one in a compromising position with his wife, and on following him into the back yard, and inquiring who it was, deceased drew his pistol.

6. *Same; Conviction of Lower Acquittal of Higher.*—A conviction of manslaughter is available as an acquittal of murder, on a new trial, after reversal, or other action setting aside former verdict.

7. *Evidence; Expert and Opinion.*—The opinion of medical experts, who have examined the wounds, is not admissible to show the relative position of the parties to the difficulty, one to the other.

8. *Trial; Remarks of Court.*—The remarks of the court stated and examined and held to have been prejudicial to the defendant, and error.

APPEAL from Geneva Circuit Court.

Heard before Hon. H. A. PEARCE.

Isham Rigell, alias, was convicted of manslaughter in the first degree, and appeals. Reversed and remanded.

The defendant was convicted of killing Tallie Purvis, under the circumstances as stated in the opinion. Dur-

[Rigell v: The State.]

ing .the examination of a witness concerning a pistol
found in the yard the next morning, the solicitor said:
"Suppose they found one there? It does not necessarily
follow from the fact that it was a pistol . that was
dropped there by deceased, as there was plenty of time
and opportunity for a pistol to have been dropped there
by another party," whereupon, defendant objected, and
the court said: "That may all be very true," which
was never finished, as the attorney for defendant inter-
posed with: "I except to your honor's statement." The
court then inquired as to what statement. The attor-
ney replied: "That is true," and the court replied: "I
said that may all be very true."

ESPY & FARMER, and W. O. MULKEY, for appellant.
Under the facts in this case, the offense cannot be any-
thing more than manslaughter.—*State v. McNeal,* 102
Ala. 121; *Hook v. State,* 99 Ala. 168. The court erred
in permitting the physician who examined the wound
to give his opinion from the character of the wounds as
to the relative positions of defendant and deceased to
one another at the time of the shooting.—*Page v. State,*
61 Ala. 16; *Wilkerson v. Mosely,* 30 Ala. 562; *Bennett
v. State,* 46 Am. Rep. 26; *Foster v. State,* 12 South.
822; *McKee v. State,* 82 Ala. 32; *Walker v. State,* 58
Ala. 393; *Dumas v. State,* 159 Ala. 44; 5 Enc. of Evid.
588. It is always permissible to show the whereabouts
of defendant shortly before, at and just after the diffi-
culty.—*Raines v. State,* 88 Ala. 91. The remarks of the
court were error prejudicial to defendant.—*Clinton v.
State,* 47 South. 389. It is competent to show that de-
ceased said when warned to be careful: "This is my pro-
tector," at the same time drawing his pistol.—*Gilmore
v. State,* 141 Ala. 53; *Turner v. State,* 160 Ala. 44;
*Gunter v. State,* 111 Ala. 29.

· R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State.

THOMAS, J.—The principles of law applicable to one theory of the defense here are so clearly stated by Judge COLEMAN, in *Hooks v. State,* 99 Ala. 168, 13 South. 768, that we quote as follows: "Where one person detects another in the act of adultery with his wife, and immediately slays the adulterer or his wife, as a matter of law the provocation is sufficient to reduce the killing to manslaughter. The law does not declare that anything less than actual sexual intercourse is a sufficient provocation, * * * to reduce the offense from murder to manslaughter. It may be that the detection of another, under circumstances such as testified to by the defendant, may provoke and engender passion to such a degree as to overthrow reason, and if, under the influence of passion thus aroused, he immediately attack the offending party and slay him, before cooling time has intervened, not from malice or unlawful formed design, but from such passion thus provoked, the offense may be manslaughter. Whether the party acted under the influence of such a passion, and whether the provocation was sufficient, and whether there had been 'cooling time,' are questions of fact to be determined by the jury. The principle we announce is that the law does not declare the provocation sufficient, unless the parties are detected in the act; but a jury may say whether the compromising position of the parties was sufficient to arouse passion in the husband to such a degree as to overthrow reason, just as the jury may say in some other cases whether the offense was the result of sudden and sufficient provocation as to reduce the offense from murder to manslaughter." The law, however, never wholly excuses the husband from responsi-

[Rigell v. The State.]

bility for taking the life of his wife's paramour, even though he comes upon the two in the very act of sexual intercourse, and slays under the sudden heat of the very pasison thereby engendered. The sole extent of the law's charity, in such a case, is to reduce the homicide, which would otherwise be murder, to manslaughter in the first degree.—*Hooks v. State, supra; McNeill v. State,* 102 Ala. 121, 15 South. 352; 48 Am. St. Rep. 17.

Here the defendant was convicted of only manslaughter in the first degree; and hence that portion of the alleged errors of the trial court which relates exclusively to or affects solely that ground of the defense that was based on the theory that the killing was done under a sudden heat of passion was, if error, error without injury—whether that heat of passion was aroused in the breast of defendant by the fact of his apprehending his wife and deceased in the act of adultery, or in such compromising position as to indicate it, or was engendered by the assault alleged to have been committed on him by the deceased a few moments after such apprehension or discovery. By the verdict the defendant got the full benefit of either of these theories. This being true, and it being further true that on a subsequent trial neither of these issues can arise again (if the defendant, as no doubt he will, pleads this verdict, finding him guilty of manslaughter in the first degree, as an acquittal of the charge of murder), we deem it entirely unnecessary to discuss those alleged errors of the trial court which, if errors, are of such character as may be said to be clearly confined in their deleterious or injurious effects solely to the issue as to whether defendant was guilty of murder or voluntary manslaughter.

On the next trial (which we are of opinion the defendant is entitled to for reasons hereinafter considered),

4 CA

the single issue will be whether defendant is guilty of voluntary manslaughter or guilty of nothing, on account of self-defense—as, under the evidence, the verdict must be one or the other. We will limit our discussion, therefore, to those alleged errors of the trial court which, in our opinion affected, and are calculated on another trial to affect, this single defense; all the other defenses having, as shown, been merged into the verdict of guilty of voluntary manslaughter.

The evidence for the defendant, as to this defense, tended to show that on the night of the killing, he, a young married man, went home about 10 o'clock from the drug store, where he clerked, in the town of Slocomb; that as he approached his home he discovered that the light in his room was dimly burning; that, before entering the house, he stopped in the yard a few moments, and while standing there he heard somebody on the inside of the house talking in a low tone, whereupon he walked nearer to the house and looked into the room through the window (the inside shade, which covered it, lacking a few inches of being pulled entirely down), when he discovered his wife and a man, whom he did not then recognize, on the bed together; that defendant then ran up the steps to the front door, and through it saw a man going out of the back hall door, whereupon defendant came back down the front steps and ran around the house to the back porch, and found the man standing there on the back porch; that defendant halloed twice, demanding to know who it was, to neither of which demands the man made any reply, but immediately, on the second demand, defendant saw him pull his pistol out of his pocket; and that then the defendant quickly pulled his own, and commenced to shoot at the man, while he was still standing on the back porch, firing then four shots at him (the only shots

fired), after which deceased ran. Several witnesses, including the town marshal, testified to finding early the next morning a pistol, covered with dew, on the ground right near the back porch where deceased was standing during the shooting. This pistol was introduced in evidence, and identified by witnesses as being the property of deceased, and as having been seen in his possession on the afternoon of the night of the killing. One Sellers, a neighbor of defendant, heard the shooting that night, and in a few moments afterward saw deceased at his (witness') yard gate, he having run there from defendant's house immediately after the shooting. His trousers were unbuttoned, and otherwise bore unmistakable signs of immediate prior sexual intercourse, and he admitted to Sellers that he had been in the wrong place, explaining that he had been in defendant's house that night while the latter was not at home, and that when defendant came home he (deceased) went out the back door, and defendant went around in the back yard and shot him. Deceased was carried into the home of the said witness, Sellers, where he died the next morning from the effect of the pistol shot wounds.

In addition to all the foregoing testimony, which we think was material on the issue of self-defense, and which was let in by the court, the defendant also offered to prove that a short time before the killing he, having heard as a rumor that deceased was intimate with his (defendant's) wife went to deceased, who was a cousin of defendant, and told him about these reports, and requested him not to again visit his home. The court declined to permit this proof. The defendant also offered to prove that in the afternoon before the killing that night deceased told defendant's witness McLain that he had an engagement with defendant's wife that night, and that when witness advised him that he had

best be careful and cautious, he (deceased) pulled a pistol out of his pocket, like the one found in defendant's back yard on the next morning after the killing, and, upon exhibiting it to the witness, remarked, "This is my protection." The court declined to permit this proof, except as to the bare fact that deceased then had and exhibited to the witness a pistol.

While this evidence offered by defendant, which the court declined to let in, was, of course, clearly not admissible in support of any theory that the killing was done by defendant under a sudden heat of passion provoked by the discovery of his wife and deceased in the act of sexual intercourse, and hence could have been of no benefit to him on such a theory, yet we are of opinion that it was admissible, and would have been beneficial to defendant in support of his contention that the killing was done in self-defense, in that it tended to illustrate the conduct of deceased at the time of the tragedy, to show a motive on his part, and to show that he was the assailant. Who was the aggressor at that time was a material inquiry for the jury, and whatever evidence tended to shed light on the question without obtruding upon the minds of the jury matters which were foreign or of doubtful pertinency to that inquiry, should not have been excluded from their consideration. The excluded evidence gives character to the motive and conduct of deceased, and aids in the interpretation of his acts at the time of the shooting. It tended to establish facts from which, coupled with other facts in the case, if believed by the jury, they could reasonably infer, among other things, a reckless, dare-devil state of mind on the part of deceased at the time of the fatal difficulty, and one, like that of a midnight burglar, that was bent on the accomplishment of his purpose at any risk—prepared, ready, and entirely willing to kill, if thought

necessary to prevent interference, or enable him to get away after the accomplishment of such purpose, or to avoid detection and arrest, or to save himself from the wrath of him whose home had been invaded. The defendant had a right to ascertain who this midnight invader of his home was, and had a further right, if he so desired, to apprehend him—a criminal caught in the very act—and surrender him into the clutches of the law, and this without informing such criminal of his purpose to arrest him.—Code, §§ 6273, 6274; *Storey v. State,* 71 Ala. 329. He, the defendant, was therefore engaged in no unlawful enterprise in going into his own back yard, though armed with a pistol, and hailing deceased and demanding to know who he was. If, then, the deceased, in anticipation of and to prevent detection and arrest, or through other motives, became the assailant by drawing his pistol, or making other hostile demonstrations of a character evincing an intent to commit a present deadly assault on defendant, or one calculated to do him great bodily harm, the latter had the right to act on the reasonable appearance of things, and to do so promptly. The law does not require a man, confronted then as defendant's evidence tends to show he was, to wait and see if his assailant, if such he was, is going to shoot, or to wait and see if he may not, in the excitement of the moment, accidentally, or otherwise drop his pistol. Nor did the law require the defendant to retreat. He was at his home—within the precincts of his own castle—and was in no sense under a duty to retreat from an assailant (if such he was) who was a trespasser there, and who, under the veil of night, when its lord and master was away, had, by a previous abuse of the privilege of the entree which kinship gave, been able, on this occasion, to foully invade that sacred domain and seduce, or strip of her virtue, its erstwhile

queen. The deceased at the time of the tragedy, had
not only no right to resist arrest, but no right to de-
fend himself, by inflicting injury on defendant, even
though he had been assailed by defendant with a deadly
intent while acting under the sudden heat of passion
engendered from discovering deceased in the act of sex-
ual intercourse with his (defendant's) wife. In such
case, though defendant were the aggressor, and there
was no way to escape death at his hands except by tak-
ing his life, still, if deceased had done so, he would have
been guilty of murder, for he was the wrongdoer in the
first instance, was not therefore free from fault in bring-
ing on the difficulty, but, on the contrary, had furnished
the very provocation which brought it on.—*Dabney v.
State,* 113 Ala. 38, 21 South. 211, 59 Am. St. Rep. 92.

Under the authority of *Gafford v. State,* 122 Ala. 62,
25 South. 10, and on principles there declared and fully
amplified, we are of opinion that the evidence which the
court declined to allow defendant to introduce was
clearly admissible under the circumstances of this case,
and that defendant should have had the benefit of it.

The physician who attended deceased, as a witness
for the state, testified that he examined the wounds of
deceased, and that the shot, which entered the stomach,
ranging upwards to the lungs, produced his death, and
that after making the examination he went that same
night down to see defendant and asked him to show wit-
ness the position in which he and deceased were stand-
ing when the latter was shot, which defendant then de-
scribed, and which witness detailed on the stand. The
solicitor then asked the witness, "From the position in
which the defendant stated that he was standing at the
time he fired the shots, what would have been the rela-
tive position of deceased with defendant, at the time of
the firing of the shots?" Over the defendant's objection

[Rigell v. The State.]

the court permitted the witness to answer the question. In this we think the court was in error.

In the Encyclopedia of Evidence, vol. 5, p. 588, we find the following text: "According to the overwhelming weight of authority, the opinions of medical experts are not admissible to show the position of an injured person at the time the wound was received, or the position of the person who inflicted it, because, as has been said, surgeons are not presumed to be experts in the matter of giving or receiving wounds, and the jury are equally capable of drawing proper inferences from the facts proved." The long list of cases cited in the note fully sustain the text. See in connection, as of similar purport, the following cases: *Foster v. State,* 70 Miss. 755, 12 South. 822; *McKee v. State,* 82 Ala. 32, 2 South. 451; *Dumas v. State,* 159 Ala. 44, 49 South. 224, 133 Am. St. Rep. 17.

The remarks of the court in the presence of the jury, which were excepted to, were, we think, clearly improper and prejudicial to the interest of defendant.

We need not discuss other alleged errors, as they are not likely to arise on another trial, for reasons hereinbefore mentioned.

For the errors pointed out, the judgment of conviction is reversed, and the cause remanded.

Reversed and remanded.