# Phillips v. The State.

## Murder.

(Decided May 19, 1914.   65 South. 444.)

1. *Homicide; Verdict; Sufficiency.*—Where the indictment charged manslaughter in the first degree, and the jury found defendant guilty as charged in the indictment and fixed his punishment at one year in the penitentiary, the verdict was sufficient to sustain a conviction of manslaughter in the first degree, and a judgment sentencing defendant to twelve months' hard labor for the county.

2. *Same; Evidence.*—Where the prosecution was for manslaughter it was not competent for the father of deceased to testify that the next day after the cutting flesh was protruding from the wound, and that he or some one else cut this protruding flesh off, since it was not part of the res gestæ, and was res inter alios acta.

3. *Same; Dying Declarations; Impeachment.*—Statements made by the father of deceased to third persons that on the morning of the difficulty he went to the deceased and tried to dissuade him from having a difficulty with defendant, were not admissible to impeach the dying declarations of deceased, as they were not statements made by him.

4. *Same; Evidence.*—Where the prosecution was for manslaughter it was error to exclude evidence that late in the afternoon before the difficulty, which occurred early the next morning, the deceased borrowed a knife and said to the person from whom he borrowed it, "I will keep this, I may need it," since although it did not conclusively appear that his purpose in borrowing the knife was a prepara-

tion for the difficulty which ensued, it was capable of that construction, and it was for the jury to determine just what it meant.

5. *Same; Dying Declarations.*—Where a deceased's dying declarations had been written down, it was not error to permit the witness to state that after these declarations had been read over to deceased, he stated that it was correct, such evidence being but a certification of the work of the scribe.

6. *Same; Surrender.*—Where defendant was being prosecuted for manslaughter, it was not error to refuse to permit him to state that after the difficulty he came to town and surrendered himself to the sheriff, the state not having proved nor attempted to prove flight.

7. *Appeal and Error; Harmless Error; Evidence.*—Where several witnesses for a defendant were allowed to state the facts without objection, any error in refusing to permit another witness to testify to the same fact was harmless.

8. *Evidence; Evidence at Former Trial.*—Where it was shown that a witness who had testified at a former trial had permanently removed from the state for an indefinite length of time, his testimony on such former trial may be put in evidence against a defendant at a subsequent trial.

9. *Same; Hearsay.*—Where a witness had testified to impeaching statements alleged to have been made by one of defendant's witnesses, it was prejudicial error to permit such witnesses to state that such statements were also made in the presence of another party, who was at home sick and could not attend the trial as such statement could have no bearing on any issue, and was calculated to lead the jury to believe that if such third party was present, he would corroborate the witness testifying.

10. *Same; Evidence Depending Upon Preliminary Proof.*—Where a witness did not see the difficulty, but stated that the place of the difficulty was pointed out to him by other witnesses, it was error to permit him to testify as to certain tracks, as tending to show who the aggressor was, until it had been shown by the other witnesses that the place they pointed out was to their knowledge the place of the difficulty.

11. *Witnesses; Examination; Leading Question.*—A question on direct examination of defendant, "did deceased at any time put his hand in his pocket?" was leading and properly excluded.

12. *Same; Impeachment.*—Where a state witness had testified as to the tracks at the scene of the difficulty, defendant should have been permitted to show that a large number of people gathered, stood and walked around the place of the difficulty shortly thereafter, as it had a tendency to impeach the state's witness.

13. *Same.*—Where the state had offered no evidence to show that a witness was related to the defendant it was not error to decline to permit defendant to prove that such witness was not related.

14. *Charge of Court; Argumentative.*—A charge asserting that each juror must decide the issue for himself, and that if anyone had a reasonable doubt of guilt he must stand by his conviction and should not yield because every other juror disagrees with him, was argumentative and properly refused.

15. *Same; Reasonable Doubt.*—A charge directing an acquittal if a single juror has a reasonable doubt of defendant's guilt is properly refused.

16. *Same.*—To authorize a conviction in a criminal case it is not necessary that the evidence exclude every hypothesis except that of defendant's guilt, it being sufficient if it shows him guilty beyond a reasonable doubt.

17. *Same.*—Instructions based upon conviction to a moral certainty and that each juror is so convinced that each would venture to act in matters of the highest concern, etc., to their own interests, then they must acquit, have been frequently condemned as argumentative.

APPEAL from Houston Circuit Court.

Heard before Hon. H. A. PEARCE.

William Phillips was convicted of manslaughter in the first degree, and he appeals. Reversed and remanded.

The following charges were refused to defendant:

(2) It is the duty of each juror to decide the issue for himself, and, if there is any juror who has a reasonable doubt of the guilt of defendant, it is his duty to stand by his convictions, and he should not yield simply because every other juror may disagree with him.

(4) A probability of defendant's innocence is at least equivalent to a reasonable doubt of his guilt.

(21) The court charges the jury that if, after considering all the evidence in the case, a single juror has a reasonable doubt of defendant's guilt, growing out of any part of the evidence, then they must acquit defendant.

(40) The court charges you that if any individual juror is not convinced of defendant's guilt beyond a reasonable doubt and to a moral certainty, you cannot convict.

(42) Each juror is required to be satisfied of the guilt of defendant beyond a reasonable doubt before they are authorized to find a verdict of guilty, and each juror

must be separately and segregately so satisfied to support a conviction.

(46) If any member of the jury has a reasonable doubt of the guilt of defendant growing out of any part of the testimony, on consideration of all the testimony, the jury cannot convict.

(10) The court charges the jury that, unless the evidence in this case has produced a conviction of the truth of the charge with that degree of certainty on which the mind reposes with satisfaction, they must acquit defendant.

(26) If there is a reasonable supposition of defendant's innocence, you must acquit him.

(25) I charge you to acquit defendant, unless the evidence excludes every reasonable supposition but that of his guilt.

(24) Unless all the evidence in this case excludes every reasonable supposition but that of defendant's guilt, they must acquit.

(47) Before you can convict defendant, each of you must be satisfied to a moral certainty, not only that the proof is consistent with defendant's guilt, but that it is wholly inconsistent with every other rational conclusion; and, unless each of you are so convinced by the evidence of defendant's guilt that you would each venture to act upon that decision in matters of highest concern and importance to your own interest, you must find defendant not guilty.

(48) Same as 47.

ESPY & FARMER, for appellant. The verdict was not sufficient to support the judgment.—*Turner v. State,* 40 Ala. 21; *Cobia v. State,* 16 Ala. 781; *Johnson v. State,* 17 Ala. 627; *Robertson v. State,* 42 Ala. 510. The court was in error in permitting it to be shown that

the flesh protruded from the wound the following day, and that some one cut it off.—*Abernathy v. State*, 129 Ala. 888; *Gassenheimer v. State*, 52 Ala. 318; *Carson v. State*, 69 Ala. 235. The testimony of the witness on a former trial was not admissible, as the predicate for the admission was insufficient.—*Mitchell v. State*, 114 Ala. 1; *Bank v. Sewell*, 18 Ala. 616; *Griffin v. Wall*, 32 Ala. 149. Counsel discuss the other exceptions relative to evidence, but without further citations of authority. The trial court erred in refusing to give charges 2, 40, 42, 46 and 47.—*Pickens v. State*, 115 Ala. 42; *Leonard v. State*, 150 Ala. 89; *Mitchell v. State*, 129 Ala. 23; *Phillips v. State*, 156 Ala. 141; *Hale v. State*, 122 Ala. 88; *Green v. State*, 168 Ala. 104. Charges 4, 24, 25 and 26 should have been given.—*Ganey v. State*, 37 South. 355; *Whittaker v. State*, 106 Ala. 35; *Shaw v. State*, 125 Ala. 86; *Henderson v. State*, 120 Ala. 360, and authorities cited in these cases.

R. C. BRICKELL, Attorney General, and T. H. SEAY, Assistant Attorney General, for the State. The verdict was clearly responsive to the indictment, and the court entered the proper judgment.—Sec. 7092, Code 1907; *Robinson v. State*, 6 Ala. App. 13; *Ex parte Robinson*, 183 Ala. 67. There was no error in admitting evidence as to the character of the wound.—6 Enc. of Evid. 625. Immaterial evidence is not admissible for the purpose of impeachment.—*Crawford v. State*, 112 Ala. 1; *L. & N. v. Quinn*, 146 Ala. 330. The evidence of the witness on the former trial was properly admitted.—*Pope v. State*, 63 South. 71; *Jacobi v. State*, 187 U. S. 133. The court properly excluded evidence that on the day before the difficulty deceased had borrowed a knife.—*Domingus v. State*, 94 Ala. 9. The witness Granger was properly permitted to state that other persons were present

when the statement was made to which he had just testified, and that such persons were at home sick.—1 Mayf. 337. It was competent to show that the dying declarations were reduced to writing, and when read over to deceased, he stated they were correct.—*Johnson v. State,* 102 Ala. 14. Charge 2 was properly refused.—*Gaines' Case,* 115 Ala. 33; *Watters' Case,* 117 Ala. 108. Charges 21, 40, 42 and 46 were properly refused.—*Goldsmith v. State,* 105 Ala. 8. Charges 47 and 48 were properly refused.—*Rogers v. State,* 117 Ala. 9. Charges 24, 25 and 26 were properly refused.—*Garrett v. State,* 97 Ala. 18.

THOMAS, J.—There was but one count in the indictment, and it charged, in the language prescribed by the code form (form 72 [Code 1907, § 7161]), manslaughter in the first degree. The verdict returned by the jury read as follows:

"We the jury find the defendant guilty as charged in the indictment and fix his punishment at one year in the penitentiary."

The court rendered judgment of guilt upon this verdict, but sentenced the defendant to 12 months' hard labor for the county, instead of to the penitentiary for one year as named in the verdict. There is no question raised but what, if the verdict of guilt is good, the sentence of the court was the correct one (so held to be by the latest decisions of this and of the Supreme Court. —*Robinson v. State,* 6 Ala. App. 13, 60 South. 558; *Ex parte Robinson,* 183 Ala. 67, 63 South. 177); but the point made is that the verdict was a nullity and could authorize no judgment at all and consequently no sentence whatever, because it failed, it is insisted, to fix the degree of the homicide of which defendant was found guilty by the jury, and, as a result, that it was

so indefinite and uncertain that the court could not
know whether to pronounce judgment and sentence for
manslaughter in the first degree or for manslaughter
in the second degree. Practically the same point here
raised on the verdict has already been decided by our
Supreme Court adversely to the contention of appel-
lant, and the reasoning of the opinions so deciding is
such as to answer successfully the particular insistence
here made, without the necessity of a discussion on our
part to show that the verdict was one finding defendant
guilty of manslaughter in the first degree.—*Du Bois v.
State,* 50 Ala. 139; *Watkins v. State,* 133 Ala. 94, 32
South. 627; *Weaver v. State,* 1 Ala. App. 48, 55 South.
956. See, also, in connection Code, § 7092. The cases
cited distinguish, we think, the present case from the
cases cited by appellant, to wit, *Cobia v. State,* 16 Ala.
781; *Robertson v. State,* 42 Ala. 510; *Johnson v. State,*
17 Ala. 627; *Turner v. State,* 40 Ala. 21.

The father of deceased, as a witness for the state, tes-
tified as to the only wound inflicted upon deceased by
defendant, which was a knife wound, from which de-
ceased admittedly died the next day. After stating that
he, the witness, could not tell how deep the wound was,
but that it was through the fat and covering of the in-
testines, and that some of the flesh was protruding
from the wound on the next day, he, the witness, was
then asked by the state, over the objection and excep-
tion of defendant, "Did he cut part of it off?" to which
the witness replied, over similar objection and excep-
tion by defendant, "Yes, sir." The question is unin-
telligible, and we are unable to say from it what fact
it was intended to bring out, nor from either it or the
monosyllabic answer are we able to say what fact it
did bring out. But since the judgment of the lower
court must be reversed for other reasons, we will state,

that, if the object of the question was, as defendant contends, to elicit the fact that either the witness or some one else cut off some of this protruding flesh, it was improper. Such fact formed no part of the res gestæ, happened after the difficulty, was res inter alios acta, and entirely immaterial to any issue in the case.

The refusal of the court to permit the witness Granger to testify, in behalf of defendant, as to the condition of the two roads, and that the one along which defendant was traveling at the time of the fatal difficulty, which was a settlement road, and which led by the mill at which deceased was at work, was a harder and better road, more attractive by reason of the white settlements along it, and more generally traveled by the public, and not much longer, than the other road, which was a public road that defendant might have taken in going to his contemplated destination, was error without injury, for the reason that several witnesses of defendant were allowed, without objection by the state, to state the same facts, which were never ruled out, but which remained in evidence to be considered by the jury, and which were never in any wise disputed or in the least contradicted by any evidence introduced by the state. The result is that these facts, proved without objection, by several of defendant's witnesses, were in effect admitted by the state, and defendant could not consequently sustain any injury by the refusal of the court to permit him to prove the same facts by other witnesses.

The court properly sustained the state's objection to defendant's question propounded to the witness Granger who was the father of deceased, whereby it was sought to show that witness had stated, in the presence of certain named persons, that he went to the house of deceased early on the morning of the difficul-

ty, and urged deceased not to have any difficulty with defendant. What a witness says or does is immaterial and irrelevant, unless it tends to impeach him as to some statement he has made or testified to on the trial. Appellant does not contend that this is the case here, but insists only that, if the witness said to others that he went to see deceased on the morning of the difficulty and urged him not to have a difficulty with defendant, this would tend to impeach the dying declaration of deceased, wherein deceased completely exonerated himself from all fault. If the defendant had offered to prove that the witness had actually been to see deceased on the morning of the difficulty, and urged him to have no difficulty with deceased, rather than offering to prove, as defendant did, merely that witness said he did, even this would have been immaterial. The deceased may be impeached by what he himself said and did, but not by what somebody else said and did. What deceased said and did to the knowledge of the witness, indicating that deceased intended to have a difficulty with defendant, would be material as tending to impeach the statement of deceased, but what the witness said and did would not.

It was sufficiently shown that the witness Whisenant was a resident of the state of Florida to furnish an adequate predicate for the introduction in evidence of his testimony given on the former trial of the case.—*Jacobi v. State,* 133 Ala. 1, 32 South. 158; *Pope v. State,* 183 Ala. 40, 63 South. 71. Appellant's counsel, in making a contrary insistence, no doubt overlooked the testimony of the witness Granger on page 3 of the record, which clearly and positively shows that Whistnant lived in Florida, and had been living there, to the knowledge of the witness, for two years before and at the time of the trial. Besides, it seems that the testi-

mony on pages 7 and 8 of the record was sufficient to show such residence.—Authorities last cited.

Likewise, we are of opinion, upon the same authorities as cited, that a sufficient predicate was laid by the state for the introduction of the testimony of Ola Granger, given on a former trial. It appeared from the testimony of her brother-in-law, Curtis Norton (pages 12, 13, 34, and 35 of the record), that she was at the time of the present trial a resident of the state of Mississippi, and had been for 20 months.

The court, on motion of the state, excluded evidence introduced by defendant to the effect that late in the afternoon before the difficulty, which occurred early the next morning, the deceased borrowed a knife, and, that as he was shutting it up and putting it in his pocket he said to the witness, from whom he borrowed it: "I will keep this; I may need it." The witness was permitted to state, however, that on the next day, after deceased had been wounded in the difficulty, he saw him, and that deceased then told him:

"Your knife is there in my pants pocket.  *  *  * I am hurt pretty bad, I think, but if I had used that knife as I intended to, this place would have been on William [referring to defendant] instead of on me."

We are of opinion that the court should have allowed the excluded declaration of deceased to remain in evidence. While from this declaration it does not conclusively appear that deceased's purpose in borrowing the knife was in preparation for the difficulty, or that he then had defendant in mind, yet, it was susceptible of such a construction, and it was the province of the jury to interpret its meaning in the light of all the surrounding facts and circumstances. If they believed that deceased borrowed the knife for such a purpose, the fact was certainly material as tending to shed light

upon and give character to the conduct of deceased at the time of the fatal difficulty.—*Rigell v. State,* 8 Ala. App. 49, 62 South. 977.

The question propounded by defendant's counsel on redirect examination of defendant as a witness for himself, "Did deceased at any time put his hand in his pocket?" was clearly objectionable as being leading. Besides, the fact sought to be elicited had already been fully covered by the witness in his statement on direct examination.

Grady Granger, introduced as a witness for the state, after testifying to impeaching statements alleged to have been made by defendant's witness Louis Granger, and that such statements were made in his presence and in the presence of one Henry Morris, was permitted to further testify, at the instance of the state, over the objection and exception of defendant's counsel, that said Henry Morris was then (at the time of the present trial) at home sick and could not be present. In our opinion it was prejudicial error to admit this evidence. Admitted under the circumstances and in the connection in which it was admitted, it amounted, in practical effect, to the state's proving that Henry Morris was one of its witnesses, and that the reason he would not be introduced to corroborate the present witness on the point mentioned as testified to by him was that said Morris was at home sick. Hearsay evidence is not admissible. If the state desired the testimony of Morris, it should have, before entering upon the trial, prepared a sworn showing, setting forth what it expected to prove by him, and that he was not absent with its consent or by its procurement, which showing, if defendant had admitted it, would have been legal evidence for the state as to what the witness would swear, and which showing if defendant had refused to admit it, would have form-

ed a proper predicate for an application for a continuance on the part of the state until it could procure the presence of the witness. Only upon the hearing of such an application would the fact of the absence of the witness on account of sickness have been a material matter, and then one only for the consideration of the court. Certainly such fact could have no proper bearing on any issue before the jury, for to the legal mind it could afford no just basis whatever for an inference that the witness Morris, if present, would substantiate in his testimony the testimony of the witness on the stand. Whether he would or not is a matter of pure guess and conjecture, yet the admission in evidence, under the circumstances as before detailed, of the testimony as to such fact was well calculated to lead the untrained minds of the jury to the unwarranted assumption that they were authorized to believe that if Morris were present he would corroborate the witness, then testifying, as to said impeaching statements. Of course, if, as is not the case, however, the witness Morris had been kept away by the defendant or through his instrumentality, such fact would form the subject of legitimate proof, as it would furnish just ground for an argument and inference that his testimony was unfavorable to defendant and favorable to the state, and vice versa. But where the witness is not shown by one party to be absent by the procurement of the other, the fact and cause of his absence is immaterial to any issue before the jury, as it gives rise to neither favorable nor unfavorable inferences and is not the subject of legitimate argument by either party; and this is because each party had the equal opportunity and right to enforce the presence of witness by subpœna and attachment, if he was not sick, and if he was sick to make proper showing as to what he would swear.—*Crawford v. State*, 112 Ala. 1, 21

South. 214, and cases there cited. We are certainly not able to say that we are satisfied the error in admitting the testimony mentioned was not injurious, which we must do before a reversal of the case could be avoided on account of it.—*Abernathy v. State,* 129 Ala. 88, 29 South. 844.

The court, over the objection and exception of the defendant, permitted the state to prove by its witness Cartwright, who was not present at and did not see the difficulty, and could not, therefore, of his own knowledge state where it occurred (the exact place of it being a matter of dispute in the present case), to testify that two named persons, who had previously testified in the case that they saw the difficulty, pointed out to witness the place of it, and that witness examined the place so pointed out, and found certain conditions as to tracks, which he detailed, but which it is unnecessary here to recite further than to say that the position of these tracks, as testified to by him, tended in a general way to corroborate the testimony of the state's eyewitnesses, to the effect that defendant advanced on deceased just before striking the fatal blow. The probative force of these tracks rests, it is thus seen, upon the fact that they were made by defendant, and made by him at the time and place of the difficulty and just before the striking by him of the fatal blow. The witness of his own knowledge neither knew that these tracks so found by him were the tracks of the defendant, nor that they were made at the time of the difficulty. As to whether they were or not was therefore purely a matter of inference for the jury. One link in the chain of facts necessary to afford a proper basis for such an inference was the fact, if it be a fact, that these tracks, so testified to by the witness, were at the place of the difficulty. Such fact, if it be a fact, was proved only by hearsay; the

witness testifying in effect, as he did, that he had no personal knowledge of whether or not it was the place, but that the two persons named, as before referred to, pointed out to him such place as the place of the difficulty. We are of opinion that, for the testimony of the witness as to the tracks to be competent, it should have been preceded by testimony from these persons themselves, to the effect that the place they pointed out to the witnesses was to their knowledge the place of the difficulty. Of course, this would not have been necessary if, previously to the testimony of the witness, the state had, by the testimony of these or other witnesses who knew, so identified in evidence such place by such description of its physical characteristics as would distinguish it, and the witness had described the place at which he found the tracks, and his description of it had corresponded with that so previously proved by the state.

The court likewise erred in not permitting the defendant to show that shortly after the difficulty a large number of people gathered, stood, and walked at and around the place of it, since such testimony afforded ground for an inference that, before the state's said witness, Cartwright, saw the place of it, its condition as to tracks, whatever it may have been at the time of the difficulty, had been so changed or obliterated by reason of this subsequent walking at and around the place that it was entirely different when Cartwright saw it from what it was at the time of the difficulty. In other words, such evidence had a tendency to impeach or contradict Cartwright, and should have been admitted.

There was no error in permitting the state's witness Burkett to testify that after deceased's dying statement had been written down, he said, upon its being read over to him, that it was correct. This was but a verification

on the part of deceased of the work of the scribe who wrote down such statement.

There was no error on the part of the court in declining to let the defendant prove that after the difficulty he came to the county seat and surrendered himself to the sheriff. The state had neither proved, nor attempted to prove, flight on the part of defendant. In the absence of such proof, it is never admissible for accused to prove that he did not flee, or that he surrendered himself.—*Pate v. State,* 94 Ala. 14, 10 South. 665; *Johnson v. State,* 94 Ala. 35, 10 South. 667.

It is elementary law that where a witness is related to the party introducing him, the opposite party has a right to show the fact of such relationship, since such fact is evidence tending to discredit the witness; but, where a witness is not related to the party introducing him, and the opposite party has offered no evidence tending to show that he was, the party introducing the witness cannot complain that he was not permitted to show the fact that there was no relationship. Hence the court cannot be put in error for refusing to allow defendant to prove that his witness Long was not related to him.

Written charge No. 2, refused to defendant, was argumentative, and the principles of law stated were fully covered by given charges.—*Waters v. State,* 117 Ala. 108, 22 South. 490; *Rogers v. State,* 117 Ala. 192, 23 South. 82; *James v. State,* 115 Ala. 83, 22 South. 565.

Written charge 21 was properly refused, since it directed an acquittal if a single juror had a reasonable doubt of defendant's guilt. On the hypothesis stated in the charge, the law says the jury cannot convict, but it does not say, as stated in the charge, that they must acquit.

While refused charges 40, 42, and 46 correctly stated the proposition, the court will not be reversed for refusing them, since they were fully covered by given charge 42.

Refused charge 4 was covered by given charge 55.

Refused charge 10 is a practical duplicate of given charge 11.

Charges 24, 25, and 26 were properly refused (*Garrett v. State,* 97 Ala. 18, 14 South. 327) ; and so were charges 47 and 48 (*Rogers v. State,* 117 Ala. 9, 22 South. 666).

We have discussed all the points likely to arise on another trial. For the errors pointed out, the judgment of conviction is reversed.

Reversed and remanded.