## Ingram *v.* The State.

### *Murder.*

(Decided June 30, 1915.   Rehearing denied October 4, 1915.
69 South. 976.)

1. *Appeal and Error; Harmless Error; Evidence.*—Where the matter admitted was not part of the res gestæ, and was not unfavorable to the defendant, its admission was harmless, if error.

2. *Homicide; Evidence; Malice.*—The state may show that defendant made threats against deceased a short time before the killing as tending to show malice and a disposition to harm deceased.

3. *Evidence; Opinion; Conclusion.*—Where the question was whether defendant had made threats, the response that the parties were fussing was not objectionable as a conclusion or opinion of the witness.

4. *Witnesses; Examination; Responsive Answer.*—Where the question was whether deceased had made threats, the statement volunteered by the witness that deceased was cussing at defendant, was not responsive to the question, and was properly excluded.

5. *Same; Cross-Examination.*—Facts concerning disputes or difficulties between deceased and other parties with which defendant was not connected were not the proper subject of cross-examination.

6. *Evidence; Opinion.*—A witness may testify as to what he observed as to the condition of the shirt and arm wound of a third person shortly after the killing, at which time he saw them.

[Ingram v. The State.]

7. *Homicide; Evidence; Self-Defense.*—Where no evidence had been introduced tending to show that defendant acted in self-defense in shooting deceased, it was not error to refuse to permit defendant to introduce evidence that deceased cursed and abused him shortly before the killing, but in a transaction not connected with the killing.

8. *Appeal and Error; Harmless Error; Evidence.*—Where the evidence was not excluded, and defendant received the full benefit at a subsequent time of that or similar testimony, the sustaining of an objection to the evidence as originally offered was harmless, if error.

9. *Homicide; Evidence; Res Gestae.*—It was not error to exclude evidence as to conversations between defendant and a third person while going to the scene of the crime in which conversation such person suggested to defendant that he go to see deceased about picking cotton for defendant.

10. *Trial; Reception of Evidence; Offer of Proof.*—Where defendant stated to the court that he expected to show what "one said to the other," such statement was too indefinite to render the exclusion of a conversation between defendant and a third person to show why defendant went to deceased at the time of the homicide, error.

11. *Evidence; Opinion.*—A statement by a witness that immediately before the killing, the parties thereto were not engaged in a scuffle or difficulty, was not objectionable as calling for an opinion.

12. *Homicide; Evidence.*—Where the evidence was in conflict as to whether deceased had a knife, and attempted to use it to cut defendant, it was competent for a witness who did not come upon the scene until after other persons had arrived, to state that deceased did not have a knife.

APPEAL from Houston Circuit Court.

Heard before Hon. H. A. PEARCE.

Malcolm Ingram was convicted of manslaughter in the first degree, and he appeals. Affirmed.

The charge was the killing of Zollie Bryson by shooting him with a gun. The state asked the witness Powell if Ingram made any threats at that time, and the witness answered, "Why, Bryson was cussing at him." This answer, on motion of the state, was excluded. On the cross-examination of the witnesses Smith and Johnson, the defense, on cross-examination, asked them: "Were you there when this negro had some trouble with old man Horn?" The objection of the state was sustained. Also, "What did you see on Mr. Searcy's arm?" and "That was right at the time when Zollie got a brickbat

[Ingram v. The State.]

and was about to knock old man Horn off his wagon, wasn't he?" The other matters sufficiently appear from the opinion.

ESPY & FARMER, E. H. HILL, and LEE & TOMPKINS, for appellant.

W. L. MARTIN, Attorney General, and J. P. MUDD, Assistant Attorney General, for the State.

PELHAM, P. J.—(1) Even should it be conceded that the matter inquired about was not part of the res gestæ, and that the court erroneously permitted the solicitor to ask the state's witness J. J. Powell the question: "After the shot was fired, the man on the right turned loose. Did he then go back and take hold of the negro any more?"—the answer elicited was not injurious or prejudicial to the defendant, for the witness answered, "Not as I noticed." This evidence not being unfavorable to defendant, its admission, if error, was without injury.—*Austin v. State,* 145 Ala. 37, 40 South. 989; *Braham v. State,* 143 Ala. 28, 38 South. 919.

(2, 3) It was entirely competent for the state to show by the witness Powell that the defendant made threats against the deceased at Trautwine's store but a short time before the killing, for the purpose of showing malice and a disposition to harm deceased.—*Parham v. State,* 147 Ala. 57, 42 South. 1. Nor was the question, asking if the defendant had made threats, objectionable as calling for the opinion of the witness, nor was the evidence elicited by the question objectionable as being the opinion or conclusion of the witness. The statement of the witness that the parties were "'fussing" was but the statement of a collective fact, based on his personal knowledge from seeing and hearing the parties and ob-

serving their conduct. See *Hill v. State,* 146 Ala. 51, 41 South. 621; *Tagert v. State,* 143 Ala. 88, 139 South. 293, 111 Am. St. Rep. 17; *Sims v. State,* 146 Ala. 109, 41 South. 413.

(4) The state had a right to have the court exclude the statement volunteered by the witness Powell that was not responsive to the question calling for threats made by defendant against deceased.

(5) A defendant should not be permitted, under the guise of a cross-examination for the purpose of testing the accuracy of the memory of a witness, to prove the particulars of a former difficulty between the deceased and a third party forming no part of, and having no connection with, the killing of the deceased by the defendant and for which he was on trial; and the court properly exercised its discretion in refusing to allow the defendant to bring out foreign matters immaterial to the issues on the cross-examination of the witnesses R. A. Smith and Jack Johnson, as to a dispute or difficulty between the deceased and one Horn, with which defendant was not concerned or connected. It is discretionary with the trial court as to what extent cross-examination of a witness will be permitted on irrelevant matters for the purpose of testing the accuracy of the witness' knowledge.—*Dilburn v. L. & N. R. R. Co.,* 156 Ala. 228, 47 South. 210.

(6) There was no error in allowing the witness Jack Johnson to testify to what he observed as to the condition of the shirt and arm wound of Searcy shortly after the killing, at which time he saw them.—*Fowler v. State,* 155 Ala. 21, 45 South. 913.

(7) When the state's witness Cliff McGowan was interrogated about what he heard take place between the deceased and the defendant at Fowlke's store some 10

minutes before the killing, no evidence had been introduced showing that the defendant acted in self-defense in shooting the deceased, and the court cannot be put in error for refusing to allow the defendant, at that stage of the proceedings, to show that the deceased cursed and abused the defendant at that time and place prior to, and disconnected with, the occurrence of the killing. If this evidence would have had a tendency later (as contended by defendant) to substantiate the testimony of the defendant when he was subsequently examined as a witness as to what took place at Fowlke's store, the defendant should have offered to make the proof after the defendant had testified, or after there was evidence introduced tending to show that the defendant acted in self-defense.—*Gilmore v. State,* 141 Ala. 51, 37 South. 359.

(8) One or more of the questions that elicited the testimony of the defendant's witness Angus Kirkland, to the effect that the deceased a short time before the main transaction resulting in the killing, jumped on a wagon standing near the wagon of one Horn, and then got into Horn's wagon and drew back a brick in an attempt to strike Horn, when a third party interceded and took the deceased away, while shown to have been objected to by the state and the objection to the question sustained by the court, did not result in an exclusion of the evidence, and the defendant was not injured thereby, even if it be conceded that the ruling was erroneous; for the defendant seems to have subsequently received the full benefit of this testimony by the witness (*Kirby v. State,* 151 Ala. 66, 44 South. 38; *Borden & Co. v. Vinegar Bend Lumber Co.,* 7 Ala. App. 335, 62 South. 245), and, if not, several other witnesses testified to the same facts, and they were not controverted, but, on the con-

trary, were before the jury without conflict in the evidence.—*Phillips v. State,* 11 Ala. App. 15, 22, 65 South. 444. These facts were practically without contradiction, and it was harmless, if error, to refuse to admit cumulative evidence of such facts.—*Hauser v. State,* 6 Ala. App. 31, 60 South. 549.

(9) The defendant's counsel insists in brief that the court was in error in not permitting the defendant's witness Isham Searcy, and the defendant, when being examined as a witness in his own behalf, to narrate a conversation that took place between the two a short time before they (under one phase of the evidence) went to the place where the deceased was and joined him and walked along the street or road with him but a short distance, engaged in conversation with him, when the killing took place. The theory upon which the defendant bases his contention of this evidence of a conversation between the defendant and his companion being admissible rests upon the holding of those cases laying down the rule that in homicide cases declarations of the accused or the deceased, made just before starting to the scene of the killing, as to the purpose or object in going there, are admissible as part of the res gestæ of the transaction, or matter, though not properly speaking, a part of the res gestæ of the killing. In support of such holding see *Maddox v. State,* 159 Ala. 53, 48 South. 689, and authorities there cited on page 58.

The rulings of the court in the admission and rejection of evidence as set out in the record in this case are not shown to be at variance with the authorities cited by appellant (*Campbell v. State,* 133 Ala. 81, 31 South. 802, 91 Am. St. Rep. 17; *Tesney v. State,* 77 Ala. 33; *Harris v. State,* 96 Ala. 24, 11 South. 255; *Kilgore v. Stanley,* 90 Ala. 523, 8 South. 130), or the other author-

ities considering and upholding the rule of evidence referred to. In no instance in ruling on the admission of evidence is the court shown to have refused to let the defendant as a witness for himself, or the witness Searcy, testify to a declaration made by the defendant, expressing his purpose or object in leaving the place where the parties were engaged in conversation and going to where the deceased was. What counsel for defendant made known to the court they expected to elicit by the questions calling for a conversation between Searcy and the defendant at this time does not show that they expected to prove a declaration, made by the defendant, expressing his purpose in going to the particular place where the deceased was at that time. A declaration made by Searcy would not be competent or admissible under the rule to show the object of the defendant in going to the place as explanatory of his act and purpose in going to that particular place.

(10) In the examination of the witness Searcy the defendant's counsel stated they expected the witness to testify that "'one said to the other" (but whether the defendant to Searcy or Searcy to the defendant does not appear), "Let's go and see him about it" (referring to the deceased and his having made a promise to each of the parties to pick cotton for them). This statement to the court of the proposed testimony that it was expected to elicit from the witness was not sufficiently definite to put the court in error for refusing to admit an offered declaration made by the defendant that would constitute part of the res gestæ of the transaction. It was an equal chance that the testimony the defendant's counsel stated he offered to introduce was an inadmissible statement made by Searcy, and not the defendant; and, before the court can be put in error, it should be made

to appear that the court was definitely put on notice that the defendant offered to show by the witness that the defendant made a declaration, at or about the time of his leaving, expressing his object or purpose in leaving, that would be admissible in evidence, and not be objectionable as a self-serving declaration. The declaration that defendant's counsel offered to show by the defendant, when being examined as a witness in his own behalf, as having been made at the time in question, just before Searcy and the defendant left where they were standing and went up the street and overtook the deceased, was not a statement made by the defendant, but by Searcy, counsel stating to the court, as recited by the bill of exceptions, that the defendant would testify that Searcy said to the defendant, after the two had talked over the situation with reference to each having advanced the deceased a small sum of money on his promise to pick cotton for them, "Well, let's go and see about it." What Searcy said to the defendant was pure hearsay, and would not, as we have stated, be competent, and the court's ruling in refusing, on the state's objection, to allow the defendant to testify to what Searcy told him when the two started off to overtake the deceased was free from error. It was not material to any issue in the case why the defendant's witness Searcy, who was not implicated in the crime charged against the defendant, went to the place of the killing, or his object or purpose in so doing.—*Weaver v. State*, 1 Ala. App. 48, 55 South. 956. Besides, the defendant was subsequently permitted to go fully into his purpose in leaving where he had been talking to Searcy and overtaking the deceased, and allowed to testify that he told the deceased that he was only there for the purpose of getting the deceased to pick cotton for him and not do any-

thing else. See *Nickerson v. State*, 6 Ala. App. 27, 60 South. 446.

(11) It was not violative of the rule against letting a witness state his opinion to permit the state's witness Sam Spivey, upon being recalled, to testify that immediately before the pistol fired, the parties were not engaged in a "scuffle" or "difficulty," as the opinion represented a statement of collective facts within his knowledge, and descriptive of a condition that he saw as an eyewitness. This testimony was not outside of the issues, as contended by counsel in brief, but directly in rebuttal of testimony that had been introduced by the defendant. One of the defendant's witnesses had testified that they were "tussling" just before the shot was fired, another testified they were in a "difficulty," and still others testified to the deceased striking at the defendant with a knife and engaging in a difficulty with him just before he shot the deceased.

(12) The evidence was in conflict as to whether the deceased had a knife and had endeavored to use it in an attempt to cut the defendant, and the testimony of J. J. Powell, to the effect that the deceased did not have a knife in his hand when he got to him, was competent evidence to be considered by the jury for what it was worth, although the witness did not come upon the scene of the tragedy until after other persons had arrived. The objection made here that the answer was not responsive to the question is without merit, as this was a matter in the discretion of the court, and no motion is shown to have been made to exclude the answer on that ground in the trial court.

All matters presented for review and insisted on as error are based upon rulings of the court on the evidence. We have discussed the questions which seem to

be principally relied upon by counsel in brief, and have examined the entire record, and find no reversible error. Other rulings on the evidence shown in the transcript do not, we think, require reasoning or the citation of authority to show them to be correct.

Affirmed.